UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division – In Admiralty

ATLANTIC SPECIALTY INSURANCE COMPANY,

    Plaintiff,

v.                                                                                                     Civil Action No. __3:21cv2__

BOGDAN ANDREI BINDEA,

Serve: 1065 Tilmon Road
Charlottesville, VA 22901

    Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Atlantic Specialty Insurance Company, by and through counsel, and for its Complaint seeking this Court's Declaratory Judgment respectfully states as follows:

## JURISDICTION

1.    This is an action for declaratory relief pursuant to Title 28 of the United States Code, §§ 2201 *et seq*, in that a present controversy exists between the parties hereto in which Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

2.    Venue lies within the Western District of Virginia as this cause arises out of a policy of marine insurance delivered by Plaintiff to the insured named therein, Bogdan Bindea ("Bindea") in this District, and because Bindea is a resident of this District.

3.    This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, § 1333.

4. In the alternative, this case falls within the Court's diversity jurisdiction pursuant to Title 28 of the United States Code, § 1332.

## PARTIES

5. Plaintiff, Atlantic Specialty Insurance Company, (hereinafter "ASIC") is a corporation organized and existing under the laws of the State of Minnesota and is engaged in the business of providing marine insurance.

6. Defendant, Bogdan Andrei Bindea, who also goes by the name Andy Bogdan Bindea, is a resident of Charlottesville, Virginia and at all pertinent times is and was the owner of the offshore supply vessel, BOB ROUSE (the "Vessel").

## FACTUAL ALLEGATIONS

7. Bindea acquired the Vessel on or about November 19, 2019 (**Exhibit A**, Abstract of Title).

8. Upon information and belief, after acquiring the Vessel, Bindea permanently relocated the Vessel from the United States to Haiti to support his charitable and business endeavors.

9. On or about November 17, 2020, the Vessel was moving a cargo of cement from Port-au-Prince, Haiti to Mole Saint Nicolas, Haiti.

10. During this voyage, the Vessel apparently encountered rough seas, causing it to capsize (the "Loss").

11. The Vessel had a crew of seven. The captain, chief engineer and all other members of the crew were and are Haitian citizens.

12. As a result of the capsizing of the Vessel, two crewmembers died, and others were injured.

13. Bindea has made a claim to ASIC for insurance coverage as a result of the Loss.

14. The first notice of a claim was prepared by Bindea's legal counsel and was received by ASIC on November 30, 2020 (**Exhibit B**).

15. The Vessel is a documented vessel of the United States, with a new Certificate of Documentation ("COD") having been issued to Bindea on or about January 15, 2020 (**Exhibit C**).

16. The COD identifies the Vessel as being home-ported in Ft. Lauderdale, Florida and having Coastwise and Registry Endorsements.

17. On or about January 27, 2020, Bindea submitted an Application for Marine Insurance for the Vessel to ASIC (**Exhibit D**). This Application included the COD and the report of a marine surveyor dated December 11, 2019 (**Exhibit E,** "Survey Report") as supporting information.

18. In the Application, Bindea made the following representations, among others:

   a. Bindea has been operating vessels for 25 years;

   b. The navigation limits required were for the "AREA AROUND FLORIDA;" and

   c. The Vessel would have a crew of 3 persons and no other employees of Bindea or third party personnel would be carried on board the Vessel.

19. On January 30, 2020, ASIC requested further information from Bindea and sent an additional application form to his agent.

20. ASIC thereafter received this additional application form completed and signed by Bindea but dated January 29, 2020 (**Exhibit F**).

21. In this additional application form, Bindea stated that the location for which he was seeking coverage was "Fort Lauderdale FLA" and that he had 3 employees. He further certified that the application included "all [his] Operations, Locations, and Vessels…." He further stated

the operations for which he was seeking coverage was for "Delivering Construction Piles." *Id.*

22.     Nowhere in any communication from Bindea or his agent to ASIC is there any indication that Bindea expected the Vessel to be conducting operations in Haitian waters with a crew of seven, nor did he request coverage for such operations in his applications.

## Insurance Coverage

23.     In reliance on the truth, accuracy, and completeness of the information as submitted by Bindea, ASIC entered into a contract to provide insurance to Bindea by issuing a marine insurance policy in the form of its Commercial Marine Package, which provides a bundle of various kinds of marine insurance coverage, Policy No. B5JH04214, with effective dates of March 20, 2020 to March 20, 2021 (**Exhibit G,** the "Policy", which has been marked for convenience by counsel with bates numbers ASIC 0001 through ASIC 0049 on the lower right corner of each page).

24.     Following the Declarations pages, the Policy consists of five Sections. Section I, for Commercial Marine Liability, is then broken into four parts: Part I – Marine General liability (ASIC 0012 to ASIC 0024), Part II – Vessel Protection & Indemnity (ASIC 0025 to ASIC 0029), and Part III – Bailee Liability (ASIC 0030 to ASIC 0032). Part III is not pertinent.

25.     Section II of the Policy, for Hull Physical Damage, is set forth in one part: Part I – Vessel Hull (ASIC 0033 to ASIC 0036).

26.     Section IV of the Policy provides General Exclusions from Coverage Applicable to All Sections and Parts (ASIC 0037 to ASIC 0041).

27.     Section V of the Policy provides General Conditions of Coverage Applicable to All Sections and Parts (ASIC 0042 to ASIC 0047).

28. The Declarations Page to the Policy states that Protection & Indemnity ("P&I") coverage is provided based on the Vessel having three crewmembers (ASIC 0004-0005).

29. The Declarations Page to the Policy also states that Hull Coverage (for loss or damage to the Vessel) in the amount of $400,000, and P&I Coverage (for bodily injury and death claims, among others) in the amount of $1,000,000 is provided when the Vessel is operating in accordance with Navigation limits "[w]ithin the east coast of Florida." *Id.*

30. The Policy, however, is an eroding policy in that the limits of available coverage are eroded by "the costs and expenses of defending any suit against the insured" (ASIC 0012; *see also* ASIC 0043).

31. The Policy applies to bodily injury or property damage claims only when they arise in the Coverage territory (ASIC 0012), which is defined as "**a.** The United States of America (including its territories and possessions, Puerto Rico and Canada)" or "**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.**, above….". (ASIC 0020).

32. The Coverage territory for both Hull and P&I claims is, however, further limited by a Navigational Warranty that reads as follows:

> Navigational Warranty – Warranted that the Vessel shall be confined to the Navigational Area described in the Declarations ["within the east coast of Florida"]. If a vessel exceeds the Navigation Area, then all coverage herein is suspended until the vessel safely returns to the Navigation Area.

ASIC 0027, ASIC 0036.

33. By separate endorsement to the P&I portion of the Policy, coverage was added to provide for claims made by or on behalf of the captain or members of the crew of the Vessel. This coverage, however, is expressly limited:

> It is a condition of the Crew Coverage provided by this endorsement that the number of crew members employed aboard the insured vessel(s) at any one time shall not exceed the number shown on the Declarations page. In the event additional crew members are to be employed, the insured shall give prior notice to the Company and pay such additional premium as is required. If the insured shall fail to give such prior notice and at the time of loss in respects to crew there are more crew employed, this insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of loss.

ASIC 0028.

34. As is typical with most insurance policies, the P&I portion of the Policy excludes coverage for "D. Engagement in unlawful trade or performance of an unlawful act with knowledge of the Insured." ASIC 0026.

35. Coverage Section V, General Conditions For Coverage Applicable to All Coverage Sections, imposes further limits on the scope of Coverage:

> 5. **Representations**
> By accepting this policy, you agree:
> A. The statements in the Declarations are accurate and complete;
> B. Those statements are based upon representations you made to us; and
> C. We have issued this policy in reliance upon your representations.
>
> 6. **Concealment, Misrepresentations or Fraud**
> This Insurance Policy shall be void as to all interests insured if, whether before or after a loss, any insured hereunder has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein, or in case of any fraud or false swearing by any insured hereunder relating thereto.

ASIC 0044.

### The Vessel

36. 46 U.S.C. §§ 12131 and 12151(b)(6) make it unlawful for the owner of a documented vessel to place the vessel "under the command of a person not a citizen of the United

States" and makes the vessel subject to seizure by and forfeiture to the United States for violation of this requirement.

37. 46 U.S.C. § 8103 and 46 C.F.R. § 15.720 require that only citizens of the United States may serve as master on a documented vessel such as the BOB ROUSE operating out of a foreign port.

## COUNT ONE – BREACH OF DUTY OF UTMOST GOOD FAITH

38. ASIC repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

39. Under the general maritime law and the law of the Commonwealth of Virginia, Bindea owed an absolute duty of utmost good faith and fair dealing to ASIC, known as the doctrine of *uberrimae fidei* under the general maritime law.

40. Bindea never disclosed and in fact concealed from and misrepresented to ASIC the intended area of operations for the Vessel by failing to disclose that the Vessel would operate out of a foreign port in the nation of Haiti, far from the United States and the waters off the east coast of Florida.

41. Bindea never disclosed and in fact concealed from and misrepresented to ASIC the intended crewing of the Vessel by not disclosing that the Vessel would be manned with a crew of seven rather than a crew of three.

42. Bindea never disclosed and in fact concealed from and misrepresented to ASIC the intended manning of the Vessel by failing to disclose the Vessel would not be under the command of a U.S. citizens as required by U.S. law, but would instead be crewed entirely by Haitian citizens in direct violation of U.S. law.

43. Upon information and belief, Bindea's representation that he has been operating vessels for 25 years is not true.

44. Bindea never sought to amend or update his applications or the coverage provided by ASIC following relocation of the Vessel to Haiti.

45. This information that Bindea did not disclose would have been material to ASIC in evaluating the decision about whether to provide or continue providing insurance coverage for the Vessel and would, in fact, have resulted in a refusal by ASIC to provide insurance coverage for the Vessel.

46. Bindea breached the duty of utmost good faith and fair dealing which he owed to ASIC, rendering the insurance contract with ASIC void *ab initio.*

47. Because the insurance contract is void, ASIC owes no duty to insure, defend, or indemnify Bindea with respect to any claims involving the Vessel, any cargo it may have been carrying, or its crew.

### **COUNT II – NO COVERAGE UNDER THE INSURANCE POLICY**

48. ASIC repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

49. The provisions of the Policy as set forth above show that even if the Policy is not void *ab initio*, no coverage is owed to Bindea under the express terms of the Policy.

50. In particular, no coverage is available under the Policy because:

   a. The Vessel breached the Navigation Warranty by operating in waters far beyond the waters off the east coast of Florida at the time of Loss;

   b. The Vessel was operating outside the Coverage territory at the time of the Loss;

    c. Bindea knowingly and intentionally operated the Vessel unlawfully by placing it under the command of a Haitian citizen;

    d. The Vessel was operating unlawfully at the time of the Loss.

    e. The statements in the Declarations to the Policy are not accurate and complete;

    f. At no time before the Loss did Bindea disclose multiple material facts and circumstances concerning this insurance provided by the Policy or the subject thereof.

## COUNT III – REDUCED LIMITS

51. ASIC repeats and realleges each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

52. Even if coverage is available under the Policy, because the Vessel was manned with a crew of seven instead of a crew of three, the P&I coverage available for the Loss is reduced such that ASIC is obligated to respond only in the proportion that the stated number of crew bears to the number on board at the time of loss.

53. Inasmuch as the ratio of three to seven is .429 (rounded), then any P&I coverage owed by ASIC is reduced to $429,000 rather than $1,000,000, and this amount will be further reduced by the costs and expenses of defending any suit that may be filed against Bindea as a result of the Loss.

WHEREFORE, Plaintiff, Atlantic Specialty Insurance Company, prays for entry of judgment in its favor declaring:

1. The contract of insurance issued to Bogdan Bindea is void and unenforceable against Atlantic Specialty Insurance Company;

2. In the alternative, that Bogdan Bindea has breached the insurance contract, thereby relieving Atlantic Specialty Insurance Company of any duties or obligations thereunder;

3. Should the Court find coverage is available under the Policy, then the amount of coverage available for claims under the P&I portion of the Policy is reduced to $429,000 rather than $1,000,000; and

4. ASIC further prays for its costs, attorneys fees, and such other and further relief as may be appropriate.

Respectfully submitted on January 13, 2021.

**ATLANTIC SPECIALTY INSURANCE COMPANY,**

By: /s/ David N. Ventker
    Of Counsel

David N. Ventker (VSB No. 29983)
Marissa M. Henderson (VSB No. 44156)
Ventker Henderson, PLLC
256 West Freemason Street
Norfolk, Virginia 23510
Telephone: 757.625.1192
Facsimile: 757.625.1475
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Atlantic Specialty Insurance Company*