UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division – In Admiralty

**ATLANTIC SPECIALTY INSURANCE COMPANY,**

    Plaintiff,

v.                                                         Civil Action No. 3:21-cv-00002

**BOGDAN ANDREI BINDEA, et als.**

    Defendant, Third Party Defendants

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff/Counterclaim Defendant, Atlantic Specialty Insurance Company ("ASIC"), has moved for judgment on the pleadings in accordance with Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion should be granted.

### I. STATEMENT OF THE CASE

At the request of the insurance agent for defendant Bindea, and in reliance on two applications for insurance that appeared to have been signed by Bindea, ASIC issued a policy of Marine Insurance for an offshore supply vessel owned by Bindea (the "Vessel"). Shortly after the policy was issued, the Vessel capsized in Haitian waters, resulting in the deaths of two of the seven crewmembers on board and injuries to the other five, and Bindea made a claim for coverage. After beginning its investigation into the cause of the loss, ASIC discovered the information contained in the applications was materially false and that the Vessel was operating in violation of U.S. law and in violation of the navigation warranty in the policy. ASIC thereafter commenced this action, requesting that the Court declare the insurance policy to be null and void, or in the alternative, that Bindea had breached the policy and therefor no coverage is owed.

1

Bindea has answered the complaint, and third party-defendant USG Insurance Services, Inc. has both answered and moved to dismiss. Third-party defendant ASAP Insurance Agency has also answered, so only third-party defendant John Uhr has failed to respond. Insofar as the dispute between ASIC and Bindea is concerned, the pleadings are closed.

In his response to the Complaint (D.E. 1), Bindea filed an answer, counterclaim against ASIC, and a third-party complaint against three parties he claims were his agents (D.E. 5). Based on the judicial admissions and affirmative representations of fact contained in this pleading, it is readily apparent there is no theory of law on which coverage is owed to Bindea under the policy issued by ASIC.

## II. STATEMENT OF UNDISPUTED FACTS

In his responsive pleading, Bindea has admitted the following statements of fact are undisputed:

1. Bindea acquired the Vessel on or about November 19, 2019. D.E 1, ¶ 7; D.E. 5, ¶ VII.

2. At the time of the loss, the Vessel was being used by Bindea in Haiti. D.E. 1 ¶ 8; D.E. 5, ¶ VIII.

3. On or about November 17, 2020, the Vessel was moving a cargo of cement from Port-au-Prince, Haiti to Mole Saint Nicolas, Haiti. D.E. 1, ¶ 9; D.E. 5, ¶ IX.

4. During this voyage, the Vessel apparently encountered rough seas, causing it to capsize (the "Loss"). D.E. 1, ¶ 10; D.E. 5, ¶ X.

5. The Vessel had a crew of seven. The captain, chief engineer and all other members of the crew were and are Haitian citizens. D.E. 1, ¶ 11; D.E. 5, ¶ XI.

6. As a result of the capsizing of the Vessel, two crewmembers are missing and presumed dead, and the other five crewmembers were injured. D.E. 1 ¶ 12; D.E. 5, ¶ XII.

7. Bindea has made a claim to ASIC for insurance coverage as a result of the Loss. D.E. 1, ¶ 13, D.E. 5, ¶ XIII.

8. The Vessel is a documented vessel of the United States, with a new Certificate of Documentation ("COD") having been issued to Bindea on or about January 15, 2020. D.E 1 ¶ 15; D.E. 5, ¶ XV.

9. The COD identifies the Vessel as being home-ported in Ft. Lauderdale, Florida and having Coastwise and Registry Endorsements. D.E. ¶ 16; D.E. 5, ¶ XVI.

10. Bindea engaged John Uhr, ASAP Insurance Agency, LLC ("ASAP"), and USG Insurance Services, Inc. ("USG") as his agents to procure insurance coverage for the Vessel from ASIC. D.E. 5, ¶¶ 9, 12-14, 51, 56.

11. On or about January 27, 2020, an Application for Marine Insurance for the Vessel was submitted to ASIC (D.E.1, Exhibit D) containing what appears on its face to be Bindea's signature. This Application included the COD and the report of a marine surveyor dated December 11, 2019 (D.E. 1, Exhibit E, "Survey Report") as supporting information. D.E. 1, ¶ 17.

12. The Application, includes the following representations, among others:

    a. Bindea has been operating vessels for 25 years;

    b. The navigation limits required were for the "AREA AROUND FLORIDA;"

    c. The Vessel would have a crew of 3 persons and no other employees of Bindea or third party personnel would be carried on board the Vessel; and

    d. Bindea lives in Charlottesville, Virginia.

D.E. 1, ¶ 18.

13. Bindea denies signing or submitting the January 27, 2020 Application to ASIC, denies authorizing anyone else to complete, sign, or submit the Application to ASIC on his behalf, and denies making any of the factual representations in the Application. D.E. 5, ¶¶ XVII, XVIII, and 26.

14. ASIC received a Supplemental Application for Marine Insurance dated January 29, 2020 (D.E. 1, Exhibit F) also containing what appears on its face to be Bindea's signature. D.E.1, ¶ 20.

15. In this supplemental application form, the location for which coverage was requested was "Fort Lauderdale FLA" with the further representation that Bindea had 3 employees. Exhibit F certified that the application included "all [his] Operations, Locations, and Vessels…." and the operations for which coverage was requested was for "Delivering Construction Piles." D.E. 1, ¶ 21.

16. Bindea denies signing or submitting the January 29, 2020 Application to ASIC, denies authorizing anyone else to complete, sign, or submit the Application to ASIC on his behalf, and denies making any of the factual representations in the Application. D.E. 5, ¶¶, XX, XXI.

17. The January 27, 2020 Application, and the Supplemental Application dated January 29, 2020, make materially inaccurate or false statements regarding the intended operational territory of the Vessel, the number of crew required and intended to operate the Vessel, and materially inaccurate or false information on other matters. D.E. 5, ¶¶ 26, 53, 58, 62, 63, 65.

18. The intended area of operations for the Vessel was the waters in and around Haiti, and Bindea wanted insurance coverage for Vessel operations in Haitian waters. D.E. 5, ¶ 14.

19. Bindea wanted and believed he had secured hull and machinery coverage for the vessel in the amount of $600,000. D.E. 5, ¶ 22.

20. Bindea did not desire and did not intend to seek coverage for the Vessel to operate within the east coast of Florida. D.E. 5, ¶ 25.

**Insurance Coverage**

21. ASIC thereafter issued a marine insurance policy in the form of its Commercial Marine Package, which provides a bundle of various kinds of marine insurance coverage, Policy No. B5JH04214, with effective dates of March 20, 2020 to March 20, 2021 (Exhibit G, the "Policy", (which has been marked for convenience by counsel with bates numbers ASIC 0001 through ASIC 0049 on the lower right corner of each page). D.E. 1 ¶ 23; D.E. 5, ¶¶ XXIII – XXXV, Affirmative Defenses Sixth, Seventh, ¶¶ 8, 9, 19, 20, 22-24, 28, 29, 31, 35, 36, 43 – 49, 71, Prayer for Relief.[1]

22. The Declarations pages to the Policy, ASIC 0002-0005, also state that Hull Coverage (for loss or damage to the Vessel) in the amount of $400,000, and P&I Coverage (for bodily injury and death claims, among others) in the amount of $1,000,000 is provided when the Vessel is operating in accordance with Navigation limits "[w]ithin the east coast of Florida." D.E. 1, ¶ 29; D.E. 5, ¶ XXIX.

23. The Policy applies to bodily injury or property damage claims only when they arise in the Coverage territory (ASIC 0012), which is defined as "**a.** The United States of America (including its territories and possessions, Puerto Rico and Canada)" or "**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.**, above….". (ASIC 0020). D.E. 1, ¶ 31; D.E. 5, ¶ XXXI.

---

[1] While Bindea repeatedly references the Policy as Exhibit "C" to the complaint, this can only be scrivener's error. Exhibit C is the Certificate of Documentation issued by the United States Coast Guard. The Policy is Exhibit G to the Complaint. Nowhere does Bindea deny that Exhibit G is the Policy at issue, and he selectively quotes (and misquotes) from it at several places in his pleading.

5

24. The Coverage territory for both Hull and P&I claims is, however, further limited by a Navigational Warranty that reads as follows:

> Navigational Warranty – Warranted that the Vessel shall be confined to the Navigational Area described in the Declarations ["within the east coast of Florida"]. If a vessel exceeds the Navigation Area, then all coverage herein is suspended until the vessel safely returns to the Navigation Area. (ASIC 0027, ASIC 0036). D.E. 1, ¶ 32, D.E. 5, ¶ XXXII.

25. As is typical with most insurance policies, the P&I portion of the Policy excludes coverage for "D. Engagement in unlawful trade or performance of an unlawful act with knowledge of the Insured." (ASIC 0026). D.E. 1, ¶ 34, D.E. 5, ¶ XXXIV.

26. Coverage Section V, General Conditions For Coverage Applicable to All Coverage Sections, imposes further limits on the scope of Coverage:

> 5. **Representations**
>    By accepting this policy, you agree:
>    A. The statements in the Declarations are accurate and complete;
>    B. Those statements are based upon representations you made to us; and
>    C. We have issued this policy in reliance upon your representations.
>
> 6. **Concealment, Misrepresentations or Fraud**
>    This Insurance Policy shall be void as to all interests insured if, whether before or after a loss, any insured hereunder has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein, or in case of any fraud or false swearing by any insured hereunder relating thereto.

(ASIC 0044). D.E. 1, ¶ 35; D.E. 5, ¶ XXXV.

27. The policy was delivered to Bindea at his residence in Virginia. D.E. 5, ¶ 9.

The foregoing undisputed facts are derived entirely from the complaint, the exhibits to the complaint, and the pleading filed by Bindea in response thereto. When a defendant in its answer to a complaint admits an allegation of fact to be true, this is a judicial admission and is binding on the defendant for the remainder of the case. *Rust v. Elec.*

*Workers Local No. 26 Pension Trust Fund,* 2011 U.S. Dist LEXIS 111618, *76 n. 29, 52 Employee Benefits Cas. (BNA) 2008; 2011 WL 4565501 (W.D. Va. 2011). The same is true of allegations of fact made in a counterclaim or a third-party complaint. *Via Design Architects, PC v. U.S. Devb. Co., LLC*, 2014 U.S. LEXIS 136075, *12 (E.D. Va. 2014); *see also Minter v. Wells Fargo Bank, N.A.,* 762 F.3d 339, 346 (4th Cir. 2014).

Having admitted the foregoing facts to be true, or in the case of the insurance applications, affirmatively stating he did not submit the applications and that they contain materially inaccurate and false statements, Bindea is bound by these facts and representations. No further evidence is necessary to prove facts which are otherwise admitted. Because these facts are dispositive, no further evidence is required and issuance of judgment on the pleadings is appropriate.

### III. ARGUMENT

Bindea's demand for coverage for the Loss fails for any number of reasons. First, there was no contract between ASIC and Bindea for insurance coverage because there was no meeting of the minds. Second, even if there was an insurance contract, it was procured by fraud. Third, Bindea breached his duty of utmost good faith by failing to notify ASIC of facts that would have been material to the decision to provide coverage. Fourth, if the insurance contract is valid, then Bindea breached the contract.

**A. Standard For Evaluating a Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure is both very short and very direct: "(c) Motion for Judgment on the Pleadings. After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard applied by the courts to evaluate such a motion is also very straightforward:

> Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law…. In determining whether a party is entitled to judgment on the pleadings, the court must accept as true all material facts alleged in the non-moving party's pleading, and view those facts in the light most favorable to the non-moving party…. The court may consider the pleadings and any "written instruments" attached as exhibits. Fed. R. Civ. P. 10(c). Additionally, when a party fails to deny in a required responsive pleading any substantive allegation in the complaint, that allegation is deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

*Davis Trust Co. v. JARSS, Inc.,* 2015 U.S. Dist. LEXIS 18009, *8, 9 (2015 W.D. Va.)(internal quotes and citations omitted). Bindea has filed third-party claims against his brokers, USG, ASAP, and Uhr, and only Uhr has failed to respond. As to the dispute between Bindea and ASIC, the pleadings are closed. Based on the factual admissions and affirmative statements of fact in Bindea's response to the Complaint, motion for judgment on the pleadings in favor of ASIC is appropriate.

### B. There Was No Contract

Bindea and ASIC are in agreement that this dispute revolves around a marine insurance contract and is subject to the admiralty and maritime law of the United States. D.E. 1, ¶¶ 1, 2 and 3; D.E. 5, ¶¶ I, II, and III*; see also, e.g. Nat'l Liab. & Fire Ins. Co. v. Rooding*, No. ELH-15-2562, 2017 U.S. Dist. LEXIS 8636, *19 (D. Md. Jan. 20, 2017); *AIG Centennial Ins. Co. v. O'Neil*, 2013 U.S. Dist LEXIS 189570 (S.D. Fla. 2013). The maritime law and the common law do not differ when it comes to the basic requirements of contract formation. The predicate requirement for any contract is there must be a meeting of the minds between the parties as to the essential terms of the agreement. *Great Circle Lines, Ltd. v. Matheson & Co.,* 681 F.2d 121, 124 (2d Cir 1982)("[A] charter party is merely a contract, subject to all the rules and requirements of contract law…. Under general contract law principals no contract exists where the parties fail to agree on all the essential terms or where some are too indefinite to be enforceable."); *Pitchford v. Oakwood Mobile Homes,*

*Inc.*, 1999 U.S. Dist. LEXIS 20596, *21 (W.D. Va. 1999)("[A] valid contract also requires a meeting of the minds."); *M.P. Leasing Corp. v. Colonna's Shipyard*, 2009 A.M.C. 1462, *30-31 (E.D. Va. 2009) ("[T]here is insufficient support for this Court to find an independent contract. Plaintiff has offered no evidence of any meeting of the minds with regard to the costs and necessary details of a contract to sue, and there is no recognizable consideration."); *Valjar v. Maritime Terminals, Inc.* 220 Va. 1015, 1018 (1980) ("A contract cannot exist if the parties never mutually assented to terms proposed by either as essential to an accord.").

What Bindea wanted, and what he believed his agents had procured for him, was a contract of marine insurance to cover the Vessel in Haitian waters, without restrictions on the number of crew, and with hull and machinery coverage in the amount of $600,000. The applications provided to ASIC, however, contain none of this information, instead requesting coverage for operations off the east coast of Florida, for three crew members, and with hull and machinery coverage in the amount of $400,000. These are the contract terms ASIC thought were being requested, and an insurance policy satisfying these requirements is what it issued. At a minimum, then, there was no meeting of the minds, which in simplest terms means no binding contract was ever formed between ASIC and Bindea. What Bindea wanted, and what ASIC was led to believe he wanted by his agents, were two entirely different things. In simplest terms, Bindea thought he was contracting for one set of requirements, but ASIC was contracting for something else entirely. Basic principles of contract law lead to the inescapable conclusion that no contract exists between ASIC and Bindea.

### C. A Contract Procured by Fraud is Not a Contract

Bindea engaged Uhr, ASAP, and USG to procure a policy of marine insurance, and they were acting on his behalf as his agent. Bindea admits that Uhr and ASAP were his agents charged

9

with procuring insurance coverage on his behalf from ASIC, and he also claims that USG Insurance Services, Inc. ("USG") was also operating on his behalf to procure such coverage. D.E. 5, ¶¶ 9, 12-14, 51, 56. He likewise admits the applications they submitted to ASIC on his behalf were full of materially inaccurate or false statements of fact. D.E. 5, ¶¶ 26, 53, 58, 62, 63, 65. On its face, the Policy makes clear that it is issued "based on the representations you made to us" and ASIC "issued this policy in reliance upon your representations." D.E. 1, ¶ 35, Exhibit G at ASIC 0035.

It has long been the rule under maritime law that a vessel owner such as Bindea is bound by the representations of his agents as if he made them himself. *Connecticut Fire Ins. Co. v. Davison Chemical Corp.*, 54 F. Supp. 2, 6 (D. Md. 1944) ("Marine insurance is such a specialty that the use of brokers by vessel owners is not only very general but almost necessary for the benefit of the insured owners, and in procuring the insurance and dealing with the underwriters the broker is the agent of the vessel owners"); *Certain Underwriters at Lloyd's v. Johnston,* 124 F. Supp. 2d 763, 770 (D. PR. 1999) ("In the absence of some evidence to suggest deviation from what is the recognized rule in marine insurance, … brokers act as the agents of the insureds when seeking or placing insurance coverage, and failure on the part of the broker to comply with the obligation to disclose all facts material to a risk is imputed to the insured."). Bindea has repeatedly stated in his pleadings that Uhr, ASAP, and USG were his insurance brokers tasked by him with finding coverage for the Vessel.

Bindea repeatedly denies that he signed the insurance applications or that he authorized anyone else to complete or submit them on his behalf. Nonetheless, that is exactly what his insurance brokers did. Bindea makes no claim ASIC knew or should have known his brokers were

acting without authority or committing fraud. He is, then, bound by the representations made on his behalf by his brokers.

Maritime contracts procured by fraud (*i.e.* "fraud in the inducement") are invalid and unenforceable. *Black Gold Marine, Inc. v. Jackson Marine, Co.*, 759 F.2d 466 (5th Cir. 1985); *St. Clair Salvage, Inc. v. Bulgarelli*, 796 F. 3d 569 (6th Cir. 2015). There is no dispute ASIC relied on the insurance applications to issue a policy of marine insurance to Bindea; indeed, it had no other information on which to rely, and they are incorporated by reference in the Policy. Bindea has affirmatively, and repeatedly, stated that these applications contain materially inaccurate and false statements of fact, and further stated that his brokers had actual knowledge that he wanted coverage for a vessel operating in Haiti, without crew limits. Based on these assertions by Bindea, it is plain the brokers knew the applications they submitted on Bindea's behalf were false. It also cannot be disputed that ASIC relied on these false applications to issue coverage because the coverage provided by the Policy tracks exactly the information in the applications.

**D. Coverage is Barred by the Doctrine of *Uberrimae Fidei*.**

Bindea had an absolute duty under the maritime law doctrine of *uberrimae fidei to* disclose to a marine insurer all facts which could have an impact on the insurer's decision to issue coverage. Even if this duty is not a bedrock principal of maritime law, it is an express requirement of the Policy. *See* Coverage Section V, General Conditions For Coverage Applicable to All Coverage Sections:

> 6. **Concealment, Misrepresentations or Fraud**
> This Insurance Policy shall be void as to all interests insured if, whether before or after a loss, any insured hereunder has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein, or in case of any fraud or false swearing by any insured hereunder relating thereto.

11

Exhibit G to the Complaint at ASIC 0044.

Despite this duty, Bindea has expressly admitted the information provided to ASIC was replete with "materially inaccurate or false representations." D.E. 5, ¶ ¶ 26, 53, 58, 62, 63, 65. Further, regardless of the representations made to ASIC in the applications, Bindea has also admitted he was operating the Vessel in violation of U.S. law in that he allowed a documented Vessel of the United States to be placed under the command of a Haitian citizen. D.E. 1, ¶ 11; D.E. 5, ¶ XI. There is no credible argument this is not a material fact which should have been disclosed to ASIC.

At issue is the validity of a contract for marine insurance. The United States Supreme Court has long held that a contract for marine insurance:

> has been said to be a contract *uberrimae fidei*, and the principles which govern it, are those of an enlightened moral policy. The underwriter must be presumed to act upon the belief, that the party procuring insurance, is not, at the time, in possession of any facts, material to the risk, which he does not disclose; and that no known loss had occurred, which, by reasonable diligence, might have been communicated to him. If a party, having secret information of a loss, procures insurance, without disclosing it, it is a manifest fraud, which avoids the policy.

*McLanahan v. Universal Ins. Co.,* 26 U.S. 170, 185 (1828); *Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510-11 (1883) ("It is the duty of the assured to place the underwriter in the same situation as himself; to give him the same means and opportunity of judging the value of the risks; and when any circumstance is withheld, however slight and immaterial it may have seemed to himself that, if disclosed, would probably have influenced the terms of insurance, the concealment vitiates the policy.") (quotation omitted); *see also Comm. Union Ins. Co. v. Detyens Shipyard, Inc.*, 147 F. Supp. 2d 413 (D.S.C. 2001) (holding that the admiralty duty of utmost good faith applied to a marine insurance contract even though there was no vessel involved because ship repair was a crucial maritime activity).

Though this doctrine has been scuttled in other insurance contexts, the doctrine is "alive and well" in marine insurance, and an entrenched rule in the general maritime law. *QBE Seguros v. Moareles-Vazquez*, 986 F.3d 1, 7-8, 21-22 (1st Cir. 2021) ("[T]he peculiarities of marine insurance underscore the case for [*uberrimae fidei's*] continued desirability."). The facts here as Bindea has plead make this case a "poster child" for the doctrine: Bindea was aboard the vessel, in transit between states and also to Haiti, or in Haiti, when he was communicating with his insurance broker Uhr to get needed marine insurance. D.E. 6, ¶ 13. *Id.* at 14-15 ("Marine insurance is often needed at a moment's notice, and insurers are frequently located far away from the vessel that they are asked to insure. … Time is frequently critical to the issuance of marine insurance policies[.]"). That the contract of insurance here expressly adopts a standard similar to the *uberrimae fidei* standard only reinforces the application of the doctrine to this marine insurance policy. *QBE Seguros*, 986 F.3d at 21-22.

Under the doctrine, which puts a duty of utmost good faith on the applicant, an insurance underwriter is entitled to presume that disclosures made by one procuring insurance are accurate and complete. There is no basis to impose a duty of independent investigation on a maritime insurer. *State Nat'l Fire Ins. Co. v. Anzhela Explorer, L.L.C.*, No. 07-61162, 2011 WL 3703223, *23 (S.D. Fla. Aug. 23, 2011). Nor is it any defense to this doctrine that Bindea's agents completed the insurance application and supplemental application and made the misrepresentations or omissions without Bindea's knowledge or authority. *Id.* ("[A]n insurer may void the policy even if the failure to disclose material facts was the result of actions by a person acting "on behalf of" the actual insured."). In the context of marine insurance, the broker acts as an agent for the insured, not the insurer, the insurer is not to blame if the broker erroneously prepared the application, is

13

entitled to rely on the representations of the insured's agent, and the vessel owner is charged with knowledge that his broker possessed but failed to communicate to the insurer. *Id.*

As such, a non-disclosure or misrepresentation of a material fact is a sufficient ground to allow an insurer to void a policy of marine insurance. *QBE Seguros*, 986 F.3d at 10. The insurer need not show that the non-disclosure or misrepresentation was intentional or willful, and the policy is voided "whether the concealment be due to fraud, negligence, accident, or mistake." *Anzhela*, 2011 WL 3793223, *22 (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins.,* 795 F.2d 940, 943 (11th Cir. 1986)).

Materiality is measured by an objective standard, "by evaluating the likely impact of facts that may influence a prudent insurer when considering whether to issue a particular policy." *QBE Seguros*, 986 F.3d at 11; *Kilpatrick Marine*, 795 F.2d at 942-43 (materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk); *North American Specialty Ins. Co. v. Savage*, 977 F. Supp. 725, 728 (D. Md. 1997) ("Materiality is determined by considering whether, given the circumstances of the case, the information could reasonably have affected the determination of the acceptability of the risk.") (quotations omitted). Further, actual reliance by the insurer on the material misrepresentations at issue need not be established for the insurer to void a marine insurance policy under the doctrine of *uberrimae fidei*. *QBE Seguros,* 986 F.3d at 19. The materiality of a misrepresentation can be determined as a matter of law "when the evidence is clear and convincing, or uncontradicted." *Savage*, 977 S. Fupp. at 728.

Bindea has expressly and affirmatively stated that the applications contain false statements of fact that are material. Even without such admissions, however, there can be little doubt the omissions and misrepresentations in the application and supplemental application for insurance

"crossed the threshold for materiality." *QBE Seguros*, 986 F.3d at 22. Each of the admitted misrepresentations alone would be important to a reasonable marine underwriter when considering whether to issue a policy and how to charge for the risk. The area of operations, from a U.S. waters zone (as disclosed) to the waters around a foreign, third-world country would undoubtedly have been important to the decision to issue a policy. This point is evidenced in that the policy expressly sets forth the operational territory in the "Navigation Warranty." Further, the representations (misrepresentations) that Bindea has been operating vessels for a long period (25 years), and that there would only be three crew must also be understood as something that would influence a prudent insurer in evaluating the risk and whether to issue a policy. Other omissions would have mattered also to a prudent insurer: that the master and crew was foreign, in violation of U.S. law for a U.S. documented vessel, and that Bindea wanted to insure the vessel for 50% more than the actual insured amount. It is irrelevant, and no defense to the application of *uberrimae fidei*, that Bindea, as plead, had no knowledge of the misrepresentations or omissions. They were made on his behalf, they were material, and ASIC is accordingly entitled to a declaration the policy is void *ab initio*.

### E. Bindea Breached the Contract.

Though Bindea denies authorizing anyone to complete or submit the insurance applications on his behalf, his agents did in fact do so. The terms of the policy issued by ASIC expressly states it is issued in reliance on the applications. Though Bindea repeatedly states he never received the policy (ostensibly because he was travelling on the Vessel between New Orleans and Florida and ultimately Haiti), he also affirmatively represents the policy was delivered to him at his residence in Charlottesville. It was also delivered to his agents. The breaches of the express terms of the insurance contract are multiple, any one of which is sufficient to defeat coverage.

### 1. **Bindea failed to disclose he put a U.S. vessel under the command of a Haitian citizen in direct violation of U.S. law.**

As noted above, Bindea admits the Vessel was operating under a Certificate of Documentation issued by the United States Coast Guard. This brings with it the requirements that the Vessel was built in the United States, owned by a citizen of the United States, and, most importantly for our purposes, placed under the command of a citizen of the United States. 46 U.S.C. §§ 12131 and 12151. Bindea admits this vessel was under the command of a foreign national, a fact which was concealed from ASIC when insurance was requested and at all times thereafter, until after the Loss occurred. It was, then, plainly unlawful for Bindea to place the Vessel under the command of a foreign national, which subjects Bindea to civil penalties and makes the Vessel to seizure by and forfeiture to the United States Government. As noted above, the failure to disclose this key fact, both when coverage was requested and any time thereafter, is a violation of the duty of utmost good faith owed by Bindea to ASIC and is further a breach of the Policy terms and voids the contract. Further, the P&I portion of the Policy excludes coverage for "D. Engagement in unlawful trade or performance of an unlawful act with knowledge of the Insured." ASIC 0026.

### 2. **Operating in Haitian waters breached the navigation warranty in the Policy.**

The Policy expressly limits the geographic areas where the Vessel could operate without falling outside of coverage. Bindea claims the language is ambiguous and confusing – it is not. The applications submitted to ASIC expressly requested coverage, first for "THE AREA AROUND FLORIDA" and later for "Fort Lauderdale FLA.", and that is exactly the coverage that was issued. The applications also affirmatively stated that "all … Operations, Locations and Vessels" had been disclosed. Nowhere was any statement made that the Vessel would operate in

Haiti. The Policy as issued, including the Declarations pages, expressly and clearly states that at no time would coverage be authorized for operations outside US Waters, and this was further narrowed by the Navigation Warranty limiting coverage to Florida waters. Nothing anywhere in the policy can be read as extending coverage outside the US, and Bindea plainly admits he knew from the beginning the Vessel would be operating in Haiti.

One allegation made by Bindea in his responsive pleading cannot be left unaddressed. Bindea makes a claim relating to the Covered Perils clause that requires a rewriting of the Policy. Disappointingly, he attempts to rewrite, in his responsive pleading at paragraph 48, the "Held Covered" clause so that it reads as follows:

> …The Vessel is covered in case of any breach of conditions as to … locality … provided … notice is given to Underwriters immediately following receipt of knowledge thereof by the insured.

At paragraph 49 of his response, Bindea then baldly states:

> Bindea provided notice to underwriters immediately upon learning of the casualty and had no knowledge the Vessel may have breached the Policy condition pertaining to locality. Accordingly, the Vessel should be held covered pursuant to the above referenced provision.

The complete language as actually contained in the Policy, however, reads as follows:

> The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage, or salvage conditions, or date sailing, or loading or discharging cargo at sea provided **(a)** notice is given to the Underwriters immediately following receipt of knowledge thereof by the Insured *and **(b)** any amended terms of cover and any additional terms of cover and any additional premium required by the Underwriters are agreed to by the Insured.*

Policy (Exhibit G to the Complaint) at ASIC 0033 (emphasis added). No credible argument can be made the language as altered by Bindea accurately paraphrases the actual language in the Policy. Based on the Policy language as actually written, and not the language as altered by Bindea in his responsive pleading, the Held Coverage language provides him with no benefit.

## IV. CONCLUSION

ASIC is entitled to entry of judgment in its favor for any one of four reasons. First, there was no contract because there was no meeting of the minds. Second, whatever contract may have been entered into was procured by fraud, so again, there was no contract. Third, the Policy was void *ab initio* because Bindea breached the duties he owed to ASIC under the *uberrimae fidei* doctrine. Finally, even if there was a valid contract, Bindea breached several material terms. Based on the foregoing, then, ASIC respectfully requests that judgment be entered in its favor and that it have its costs and such other and further relief as may be just and proper.

Respectfully submitted on May 12, 2021.

**ATLANTIC SPECIALTY INSURANCE COMPANY,**

By: /s/ David N. Ventker
    Of Counsel

David N. Ventker (VSB No. 29983)
Marissa M. Henderson (VSB No. 44156)
Ventker Henderson, PLLC
256 West Freemason Street
Norfolk, Virginia 23510
Telephone: 757.625.1192
Facsimile: 757.625.1475
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Atlantic Specialty Insurance Company*