UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division – In Admiralty

ATLANTIC SPECIALTY INSURANCE COMPANY,

    Plaintiff,

v.                                                                          Civil Action No. 3:21-cv-00002

BOGDAN ANDREI BINDEA,

    Defendant, Counterclaim Plaintiff and
    Third-Party Plaintiff.

v.

JOHN UHR, ASAP INSURANCE AGENCY, LLC
AND USG INSURANCE SERVICES, INC.

    Third-Party Defendants

## COUNTERCLAIM PLAINTIFF'S OPPOSITION TO MOTION TO FOR JUDGMENT ON THE PLEADINGS

**NOW COMES,** Defendant and Counterclaim-Plaintiff, Bogdan Andrei Bindea ("Bindea"), through undersigned counsel, who respectfully submits this opposition to the Motion for Judgment on the Pleadings (the "Motion") filed by Atlantic Specialty Insurance Company ("Atlantic Specialty").

## STATEMENT OF FACTS

**I.    The Subject Incident Involving the M/V BOB ROUSE on November 17, 2020.**

This lawsuit stems from a marine casualty involving the M/V BOB ROUSE, a 100-foot utility vessel that was owned by Bindea (the "Vessel"). On or around November 17, 2020, the Vessel, while in transit from Port-au-Prince, Haiti to Mole Saint Nicolas, Haiti, encountered

rougher than expected seas, causing the Vessel to capsize (the "Incident").[1] In the aftermath of the Incident, two of the seven crew members were lost at sea and are presumed dead, while other crew members received mild to moderate injuries.

Bindea learned of the Incident on November 19, 2020.[2] That same day, Bindea contacted Third-Party Defendant John Uhr ("Uhr") to notify him about the Incident.[3] Bindea had previously used Uhr, and his insurance agency, ASAP Insurance Agency, LLC ("ASAP"), to secure coverage for the Vessel. Bindea requested that Uhr forward notice of the Incident to Atlantic Specialty, which had issued a Commercial Marine Package to Bindea (the "Policy") providing various coverages on the Vessel, including Protection & Indemnity ("P&I") and Hull & Machinery coverages.[4] Bindea, through counsel, also directly notified Atlantic Specialty of the Incident.[5]

On November 30, 2020, Bindea received correspondence from Intact Insurance on behalf of Atlantic Specialty, which acknowledged notice of the loss. Atlantic Specialty, however, took the position that coverage was voided or reduced on several bases, including, and most significantly, based on the Policy's Navigational Warranty confining the area of operations to the east coast of Florida, as well as the crew endorsement in the P&I portion of the Policy, which limited the number of crew members to three.

## II. Atlantic Specialty's Complaint for Declaratory Judgment.

Atlantic Specialty commenced these proceedings on January 13, 2021, by filing a Complaint for Declaratory Judgment and seeking a declaration that coverage was voided under the

---

[1] Third-Party Complaint, Dkt. 5, at ¶39.

[2] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶40.

[3] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶40

[4] The Policy is attached to Atlantic Specialty's declaratory judgment complaint (Dkt. 1) as Exhibit G (Dkt. 1-7).

[5] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶41.

Policy.[6] Specifically, Atlantic Specialty seeks to void coverage on several grounds, including *inter alia,* that: (1) the Vessel breached the Navigational Warranty in the Policy by operating outside of the coast of Florida, (2) the Vessel was placed under the control of a Haitian captain at the time of the Incident, (3) Bindea failed to disclose multiple, material facts and circumstances when applying for the Policy.[7] Atlantic Specialty also seeks a declaration for reduction in P&I coverage limits based on the fact that the number of crew members on board the Vessel at the time of the Incident exceeded the crew endorsement.[8]

In support of its Complaint, Atlantic Specialty attached two insurance applications, which it alleged Bindea submitted in connection with procuring the subject Policy. Atlantic Specialty contends that Bindea made the following representations in these applications: (i) that he had been operating vessels for 25 years, (ii) that the navigational limits for coverage were around the area of Florida, and (iii) that the Vessel would have a crew of three persons and no other persons would be aboard the Vessel during operations.[9] Bindea specifically denies that he filled out or executed these applications or that he authorized anyone to fill out or execute them on his behalf.[10] However, Bindea has not denied that he requested insurance coverage for the Vessel or that he requested that Uhr and ASAP obtain such coverage for his benefit.

**III.     Bindea's Counterclaim for Coverage Under the Policy.**

On February 24, 2021, Bindea answered the Complaint for Declaratory Judgment largely denying the allegations. Bindea also counterclaimed for a declaration that Atlantic Specialty

---

[6] Atlantic Specialty's Complaint for Declaratory Judgment is Dkt. 1.
[7] Atlantic Specialty's Complaint for Declaratory Judgment, Dkt. 1, at ¶50.
[8] Atlantic Specialty's Complaint for Declaratory Judgment, Dkt. 1, at ¶¶51-53.
[9] Atlantic Specialty's Complaint for Declaratory Judgment, Dkt. 1, at ¶¶17-21.
[10] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶¶XVII-XXI.

should be estopped from and/or has waived the right to enforce the Policy provisions to avoid coverage.[11]

In particular, Bindea asserted that Atlantic Specialty should be precluded from relying on the Policy limitations on coverage, including the Navigational Warranty, to avoid coverage where Atlantic Specialty failed to disclose to Bindea that coverage would be voided should the Vessel travel outside of the east coast of Florida.[12] Bindea also affirmatively pled that he had not been provided with a copy of the Policy and that the Certificate of Insurance he was provided with conflicted with the limitations on geographic coverage and insured value that Atlantic Specialty sought to enforce.[13] Bindea, moreover, contends that Atlantic Specialty accepted from Bindea significant premiums for a Policy that, under its interpretation, provided no coverage based on the Vessel's actual and intended area of operation in Haiti.[14] Indeed, under Atlantic Specialty's narrow and self-serving interpretation of the Policy, the purported coverage thereunder is "illusory" and, in fact, non-existent.[15] Based on all of the foregoing, Bindea contends that, based on the doctrines of estoppel and waiver, Atlantic Specialty is precluded from denying coverage under the Policy.[16]

## IV. Bindea's Third-Party Complaint.

In addition, pursuant to Fed. R. Civ. P. 14, Bindea also filed a Third-Party Complaint naming Uhr, ASAP, and USG Insurance Services, Inc. ("USG") as Third-Party Defendants. Bindea seeks to recover damages from the Third-Party Defendants only in the event that this Court

---

[11] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶¶42-49.
[12] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶45.
[13] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶28 and ¶33.
[14] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶46.
[15] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶46.
[16] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶47.

determines that there is no coverage under the Policy.[17] In particular, Bindea alleges that he contacted Uhr and his agency, ASAP, to assist with procuring marine insurance for the Vessel.[18] Bindea alleges that he exchanged numerous phone calls and text messages with Uhr and ASAP wherein he conveyed that the Vessel would be operating primarily in support of humanitarian relief work in or around Haiti.[19]

Bindea alleges further that Uhr and ASAP contracted with USG, an insurance wholesaler, to procure the marine coverages sought by Bindea for the Vessel based on its anticipated type and area of operations.[20] Bindea alleges that USG, occupying the position of an insurance wholesale broker, was fully aware that it had been utilized by Uhr and ASAP to secure coverage for the benefit of Bindea.[21]

At no time did Bindea advise Uhr, ASAP, or USG that the Vessel would operate solely within the east coast of Florida or that the persons on board the Vessel would be limited to three people.[22] To the contrary, Uhr and ASAP had direct knowledge that the Vessel would be operating in Haiti and, further, they were believed to have conveyed this information to USG in connection with procuring coverage for the Vessel.[23] Significantly, however, despite having knowledge that the Vessel would operate in or around Haiti, the Third-Party Defendants failed to advise Bindea that the coverage they had procured for him might be denied for any accidents or losses sustained

---

[17] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at Prayer for Relief at para. (2), (3), and (4).
[18] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶12.
[19] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶14.
[20] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶16.
[21] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶17.
[22] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶25.
[23] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶25.

outside of the Navigational Area of Florida or limited when there were more than three crew members aboard the Vessel.[24]

To the contrary, rather than properly advising Bindea of the foregoing issues, Uhr, ASAP, and USG represented to Bindea that the proper coverages had been placed on the Vessel.[25] Bindea was also provided with a Certificate of Insurance showing no territorial limitations on coverage and listing the insured value of the Vessel of $600,000 for Hull & Machinery coverage.[26] Based on these assurances from Uhr, ASAP, and USG, who each held themselves out as highly experienced insurance professionals, Bindea believed that the proper coverages had been placed on the Vessel. Bindea, however, learned that this may not be true when Atlantic Specialty provided notice on November 30, 2020, that it believed coverage had been suspended during the Incident, and thereafter filed its Complaint for Declaratory Judgment seeking to avoid coverage entirely.

Bindea asserts various species of negligence against the Third-Party Defendants, including: (1) Negligence, (2) Negligent Misrepresentation, and (3) Negligent Failure to Warn.[27] Bindea also asserts a claim for Breach of Fiduciary Duty against the Third-Party Defendants based on these same negligent acts and omissions.[28]

---

[24] *See, e.g.,* Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶29, ¶38, ¶61, ¶71, and ¶72.

[25] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶21.

[26] The Certificate of Insurance was attached as Exhibit A to Bindea's Answer, Counterclaim and Third-Party Complaint and is in the record at Dkt. 5-2.

[27] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at Counts II, IV, and V.

[28] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at Count III.

## LAW AND ARGUMENT

I.   **Legal Standard Under Rule 12(c).**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is appropriate only when there are no genuine issues of material fact and "only questions of law remain." *Va. Imports v. Kirin Brewery of Am.*, 296 F.Supp.2d 691, 695 (E.D.Va.2003). "Such motions are designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings." *Crossroads Equity Partners, LLC v. Dogmatic Products, Inc.*, 317 F.R.D. 529, 531 (W.D. Va. 2016). However, this Court should not grant a Rule 12(c) motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, 2012 WL 3542527, at *2 (W.D.Va. Aug. 16, 2012).

In reviewing a Rule 12(c) motion, district courts apply the same standard that would apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). Accordingly, this Court, in resolving this Motion, must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to Bindea as the non-moving party. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 248 (4th Cir. 1999).

Significantly, courts recognize that resolution of fact-intensive issues or questions to be particularly inappropriate at the Rule 12(c) stage. *See All Commercial Floors, Inc. v. Commercial Floor Products, LLC*, 2019 WL 330880, at *6 (M.D. Tenn. Jan. 25, 2019) (denying Rule 12(c) motion on plaintiffs' breach of contract claims which required "fact-intensive findings and

analysis," and therefore were "ill-suited for determination in a Rule 12(c) motion."); *Charles E. Hill & Associates, Inc. v. Abercrombie & Fitch Co.*, 2009 WL 10677423, at *4 (E.D. Tex. July 2, 2009) ("In conclusion, the Court finds a dismissal of Hill's fact-intensive joint infringement claim under Rule 12(c) would be unfair as significant discovery remains. Further, this issue would be more appropriately addressed at the summary judgment stage, after discovery has completed.").

Here, Bindea's claims against Atlantic Specialty are primarily grounded in theories of estoppel and waiver in that Atlantic Specialty should be precluded from denying coverage where: (1) Atlantic Specialty failed to disclose to Bindea that coverage would be voided or limited if the Vessel traveled outside of the area of Florida or had more than three crew on board; (2) Atlantic Specialty failed to provide Bindea with a copy of the Policy, and the Certificate of Insurance Bindea was provided with conflicted with the limitations on geographic coverage and insured value that Atlantic Specialty later sought to enforce; and (3) Atlantic Specialty accepted significant premiums from Bindea for a Policy that, under its interpretation, provided no coverage (and thus was illusory) based on the Vessel's actual and intended area of operation in Haiti. Resolution of the foregoing claims and assertions is highly fact-intensive, and thus should be decided by the finder of fact after full discovery and a trial. Accordingly, Atlantic Specialty's Motion should be denied.

II. **Multiple, Genuine Issues of Material Fact Preclude Resolution of Bindea's Counterclaim on a Motion for Judgment on the Pleadings.**

   A. **Bindea does not accuse the Third-Party Defendants of fraud in connection with the submission of inaccurate insurance applications without Bindea's knowledge or consent; moreover, even if he did, this fact would not preclude Bindea from ratifying the Policy through his payment of significant premiums to Atlantic Specialty.**

Atlantic Specialty first seeks dismissal on the basis that no valid maritime insurance contract was ever formed because the Policy was procured by fraud.[29] Atlantic Specialty's position should be rejected for at least two reasons. First, Atlantic Specialty incorrectly characterizes Bindea's allegations against the Third-Party Defendants as claims for intentional misconduct, when they are in fact grounded in negligence. Second, even if the Policy was procured by third-party fraud, Bindea actually paid the insurance premiums required to maintain the type and scope of coverage that he believed he had procured for the Vessel and Atlantic Specialty accepted them. A contract of insurance clearly existed.

With regard to the first point, Atlantic Specialty attached two insurance applications to insurance applications to its Declaratory Judgment Complaint, which it claimed Bindea submitted in connection with procuring the Policy.[30] These applications contain a number of objectively incorrect statements, such as the statement Bindea had been operating vessels for 25 years and the navigational limits for the Vessel were the "area around Florida."[31] In his answer, Bindea denied that he filled out these applications or that he authorized anyone to fill them out on his behalf.[32] In his Third-Party Complaint, Bindea also asserted that certain of the information contained in the

---

[29] Atlantic Specialty Memorandum in Support of Motion for Judgment on the Pleadings, Dkt. 36, pp. 8-15.

[30] The insurance applications were attached to Atlantic Specialty's Complaint for Declaratory Judgment, (Dkt. 1), and are in the record at Dkt. 1-4 and Dkt. 1-6.

[31] Atlantic Specialty's Complaint for Declaratory Judgment, Dkt. 1, at ¶18, ¶21.

[32] Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at para. XVII, para. XVIII, para. XX, and para. XXI.

applications, particularly with regard to the Vessel's area of operations, crew size, and Bindea's experience, was untrue, was not provided by Bindea, and, in fact, was inconsistent with information that Bindea provided to ASAP and Uhr.[33]

In its Motion, Atlantic Specialty relies on Bindea's foregoing denials and assertions regarding the insurance applications as a basis to argue that the coverage was procured by fraud, and therefore a valid maritime contract for insurance was never formed.[34] In so doing, Atlantic Specialty tries to cast Bindea's *negligence*-based claims against the Third-Party Defendants into assertions of *intentional misconduct* or fraud. Atlantic Specialty's position is completely unsupported by Bindea's allegations because he does not (at least at this time) allege that Uhr, ASAP, or USG engaged in fraud or any other type of intentionally wrongful conduct. Rather, as set forth in Bindea's Third-Party Complaint, the claims against the Third-Party Defendants are grounded in negligence or negligent breach of fiduciary duties owed by insurance brokers to their customers.[35]

Separately, Atlantic Specialty's position also ignores the well-established precept that an insurance application is not always required to create a valid contract of insurance. Specifically, as explained in Couch on Insurance:

> An application is not always required to create a contract of insurance. ***For example, an insurance company may make a binding contract of insurance by delivering a policy and accepting the premium thereon even though the insured never requested that the policy be issued***. In this case, the insurer is estopped from contending that the contract failed for want of an offer.

---

[33] *See e.g.,* Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶26.

[34] Atlantic Specialty Memorandum in Support of Motion for Judgment on the Pleadings, Dkt. 36, pp. 9-11.

[35] *See* Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶¶50-54 (asserting claim for *negligence* against all Third-Party Defendants); *id.* at ¶¶55-59 (asserting claim for breach of fiduciary duty against all Third-Party Defendants); *id.* at ¶¶60-66 (asserting claim for *negligent misrepresentation* against all Third-Party Defendants); *id.* at ¶¶67-73 (asserting claim for *negligent failure to warn* against all Third-Party Defendants).

Contract of insurance; application as offer, 1A Couch on Ins. § 11:1 (emphasis added).

This point is illustrated in the case of *Kincer v. Reserve Ins. Co.,* 11 Cal. App. 3d 714, 90 Cal. Rptr. 94 (Ct. App. 1970). In *Kincer*, the insured plaintiffs sought to recover uninsured motorist coverage. The insureds had sought coverage through an agent of the insurer, who filled out and signed the application form on behalf of the insured without his consent or knowledge.

On appeal from a trial court finding in favor of the insured, the insurer sought (as Atlantic Specialty does here) to avoid coverage on the fact that no insurance contract was ever formed because it was issued based on a forged application. *Id.* at 717. The appellate court rejected this position, holding:

> [The insurer] initially maintains that there was no binding contract of insurance because the application form was forged and no premium was ever charged for uninsured motorist protection.
>
> This argument is utterly devoid of merit. The plaintiff requested complete coverage except collision and medical. ***The fact that he did not sign the application form and someone else did is immaterial.*** The signature of an insured to an application is not necessary to the issuance of a valid insurance policy.
>
> ***The crucial issue involved herein is whether the plaintiffs ratified the waiver in the application by accepting the policy or electing to sue on the policy.***

*Id.* at 718 (emphasis added) (citation omitted).

Similarly, in the case of *Meyer v. Johnson,* 7 Cal. App. 2d 604, 46 P.2d 822 (2d Dist. 1935), the court addressed the validity of a life insurance policy where the application had been forged by the insured wife's husband. In refusing to void the policy based on the forged application, the *Meyer* court noted that the record evidence established that the insured knew that she had an application for life insurance pending and had signed her medical examination as required.

In this instance, irrespective of whether the insurance applications were submitted with or without Bindea's consent, or whether his signature was forged and/or placed on the applications without his consent, the cases of *Kincer* and *Meyer* (among others) establish that a valid insurance application is not necessarily required to form a binding insurance contract. To the contrary, the insured can subsequently ratify the policy by accepting the policy and paying premiums. Here, Bindea alleges that, after he was provided a copy of the Certificate of Insurance and was assured that coverage was in place, he paid substantial premiums to Atlantic Specialty. Atlantic Specialty willingly accepted those premiums.[36] These pled facts, taken as true, establish that a valid contract of insurance was formed through the payment and acceptance of premiums and other conduct. What may or may not be covered under the Policy are issues of fact that require discovery. Accordingly, Atlantic Specialty's Motion should be denied.

**B.     Genuine issues of material fact preclude a determination on whether coverage should be voided based on Bindea's purported breaches of the Policy conditions.**

Atlantic Specialty also seeks dismissal based on Bindea's alleged breaches of Policy conditions that it contends were sufficient to defeat coverage.[37] Specifically, Atlantic Specialty argues that Bindea breached the Policy conditions by: (1) failing to disclose that he would use a Haitian crew on the Vessel and (2) breaching the navigational warranty in the Policy. Again, these issues raised by Atlantic Specialty present highly disputed issues of fact that must be decided by the factfinder after discovery, rather than this Court on a Rule 12(c) motion.

---

[36] *See, e.g.,* Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶46.

[37] Atlantic Specialty Memorandum in Support of Motion for Judgment on the Pleadings, Dkt. 36, pp. 15-17.

1. **Atlantic Specialty's assertion that coverage should be voided based on Bindea's alleged failure to disclose the employment of a Haitian captain involve contested factual issues that cannot be resolved on a Rule 12(c) motion.**

Atlantic Specialty asserts that coverage should be voided under the Policy based on Bindea's use of a Haitian captain and crew aboard the Vessel, a fact which it claims "was concealed from ASIC when insurance was requested and at all times thereafter, until after the Loss occurred."[38]

As an initial matter, Atlantic Specialty's argument ignores the crucial fact that the insurance applications at issue ***did not inquire about the citizenship of the captain and the crew***.[39] Therefore, Atlantic Specialty's suggestion, that an accurate application would have demonstrated Bindea's intent to have a Haitian crew operate the Vessel, is belied by the fact that the applications ***did not even seek out such information***.

Atlantic Specialty's argument should also be rejected because there is nothing in the Policy at issue that voids coverage for using a foreign crew. Though Atlantic Specialty's Motion does seek to void coverage, in part, based on Bindea's use of foreign captain, it relies on one provision in the P&I portion of the policy that voids coverage based on "Engagement in unlawful trade or performance of an unlawful act with knowledge of the Insured."[40] To prevail on voiding coverage based on the use of a Haitian captain, Atlantic Specialty will be required to demonstrate that: (1) Bindea had ***knowledge*** that such act was unlawful, (2) that the use of a Haitian licensed captain in Haitian waters (in which a Haitian captain likely would have been more familiar than a US mariner) was a factor in the Incident, which purportedly involved a rogue wave, and (3) that such

---

[38] Atlantic Specialty Memorandum in Support of Motion for Judgment on the Pleadings, Dkt. 36, p. 16.

[39] The insurance applications were attached to Atlantic Specialty's Complaint for Declaratory Judgment, (Dkt. 1), and are in the record at Dkt. 1-4 and Dkt. 1-6.

[40] Dkt. 1 at ¶34.

actions constituted a material breach of the Policy. These questions all involve issues of fact and are certainly not proper for resolution on a Rule 12(c) Motion. Finally, this provision only applies to P&I coverage, and, as such, is not also applicable to the other coverages in the Policy, namely Hull & Machinery coverage.

For all these reasons, Atlantic Specialty's attempts to avoid its coverage obligations and obtain dismissal from this lawsuit at the Rule 12(c) stage must be rejected.

> 2. **Atlantic Specialty's reliance on the navigational warranty should likewise not be decided on a Rule 12(c) motion because there are genuine issues of material fact regarding Bindea's estoppel and waiver claims against Atlantic Specialty.**

Lastly, Atlantic Specialty seeks dismissal at the Rule 12(c) stage based on its insistence that Bindea's alleged breach of the navigational warranty in the Policy suspended coverage at the time of the Incident.[41] As stated in more detail *supra*, Bindea alleges that Atlantic Specialty is estopped from or has waived the right to rely on the Policy exclusions, including the navigational warranty or crew number limitation, as a basis to avoid coverage for the Incident.[42] Should Bindea prevail on his claims for estoppel or waiver, he is entitled to coverage regardless of the Policy's language. *See, e.g., Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1510 (9th Cir. 1987) ("[A]n insurer may be estopped from asserting a breach of warranty.").

The doctrine of equitable estoppel is recognized under the federal maritime law. *See Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 133 (3d Cir.2002) ("According to federal maritime law, the doctrine of equitable estoppel is grounded on a notion of fair dealing and good conscience. It is designed to aid the law in the administration of justice where without its aid

---

[41] Atlantic Specialty Memorandum in Support of Motion for Judgment on the Pleadings, Dkt. 36, pp. 16-17.

[42] *See also* Bindea Answer, Counterclaim and Third-Party Complaint, Dkt. 5, at ¶47.

injustice might result.") (citations and quotation marks omitted).[43] The court in *Gibbs*, applying the maritime law of equitable estoppel, described the doctrine as follows:

> Traditionally, the doctrine of equitable estoppel operates to preclude a party who has made representations of fact through his words or conduct from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right.

*Id.*

As another court has explained, "estoppel 'offsets misleading conduct, acts, or representations which have induced a person to rely thereon to change his position to his detriment.'" *Howard v. Motorists Mut. Ins. Co.*, 955 S.W.2d 525, 527 (Ky. 1997) (citation omitted). Crucially, "[n]ormally questions of estoppel ... depend upon inferences to be drawn from known facts about which reasonable men could readily differ." *Dillon v. Admiral Cruises, Inc.*, 960 F.2d 743, 745 (8th Cir.1992) (applying maritime law). Thus, estoppel usually is "a triable question of fact" to be decided by the factfinder. *See id.* (reversing summary judgment in favor of defendant on cruise ship passenger's claim for equitable estoppel).[44]

In the case of *QBE Seguros v. Morales-Vazquez*, 2017 WL 5479458 (D.P.R. Nov. 14, 2017), the insurer, QBE, moved for summary judgement and a finding of non-coverage under a maritime insurance policy based on the insured's alleged misrepresentations as to his prior boating history. The insured sought to avoid summary judgment relying, in part, on the doctrine of estoppel. In particular, the insured argued that QBE had knowledge of his prior boating history, and therefore was estopped from asserting the insured's misrepresentations as a basis for avoiding

---

[43] Waiver, also an equitable doctrine, is recognized as a valid defense or claim applicable in contract disputes governed by the general maritime law. *See QBE Seguros v. Morales-Vazquez*, 2017 WL 5479458, at *5 (D.P.R. Nov. 14, 2017).

[44] Like estoppel, waiver is also a question of fact that should generally be decided by the factfinder after discovery. *See, e.g., Nutrisoya Foods, Inc. v. Sunrich LLC*, 626 F.Supp.2d 985, 991 (D. Minn.2009) (applying Minnesota law) ("Whether a party's conduct constitutes a waiver is a fact question and depends on the circumstances involved in each case.").

coverage. *See id.* at *11. The court denied the summary judgment, reasoning that: "[w]hat information QBE had when it issued the policy and whether [the insured]'s reliance was in good faith are matters for the trier of fact." *Id.*[45]

As the *QBE* and *Dillon* cases demonstrate, the issues of estoppel and waiver present questions of fact and should generally be decided by the finder of fact at trial. At the very least, estoppel and waiver claims should only be resolved after the parties have had the chance to develop their claims through discovery. Here, Atlantic Specialty seeks dismissal of Bindea's counterclaims which are based, in part, on estoppel and waiver at the Rule 12(c) stage and before Bindea has had the opportunity to undertake *any* discovery regarding his claims.

Moreover, this lawsuit involves a multi-party insurance relationship, which includes an insured, his insurer, as well as three intermediary parties that acted to secure the Policy (Uhr, ASAP and USG). It is well-established that these insurance intermediaries can serve as the agent of the insured, the insurer, or both depending on the circumstances. In *Pacific Fire Ins. Co. v. Bowers*, 163 Va. 349, 354, 175 S.E. 763, 765 (1934), and again in *Harris v. K&K Ins. Agency, Inc.*, 249 Va. 157, 161, 453 S.E.2d 284, 286 (1995), the Supreme Court of Virginia held that while an insurance agent normally acts as the agent of the insurer, while a broker normally acts of behalf of the person seeking insurance, a broker "also may be, at the same time, an agent for the insurer for certain purposes."[46] Further, like the issues of estoppel and waiver, "Whether one is an agent or broker is a question necessarily dependent on the particular facts of each case." *Pacific Fire Ins.*

---

[45] Curiously, in this case, Atlantic Specialty was able to establish that Bindea (who is in his mid-30's) had not been operating vessels for 25 years without conducting any discovery whatsoever as this fact was alleged in Atlantic Specialty's declaratory judgment action.

[46] Principles of agency apply in maritime contracts. *See Pearson v. Leif Hoegh & Co.*, No. 91-CV-1620, 953 F.2d 638, 1992 WL 5020, at *6 (4th Cir. Jan. 16, 1992). Moreover, because there is no established federal maritime rule addressing principal-agent liability, courts instead apply state law principles. *See Fed. Ins. Co. v. PGG Realty, LLC*, 2007 WL 1149245, at *6 (S.D.N.Y. Apr. 17, 2007) (applying New York law in the absence of "an established federal maritime rule").

{N1881394 -}    16

*Co.*, 163 Va. at 354. Discovery in this matter is necessary to develop these fact-specific agency issues and may demonstrate that Uhr, ASAP, or USG became the agent of Atlantic Specialty in certain situations, thereby making their conduct imputable to Atlantic Specialty.

Accordingly, for these additional reasons, the Atlantic Specialty's Motion should be denied.

## CONCLUSION

Rule 12(c) motions may only be granted where the movant clearly establishes that no material issues of fact remain based on the pleadings that have been filed. Here, the pleadings that have been filed by Atlantic Specialty and Bindea in this multi-party insurance dispute unequivocally demonstrate that numerous, genuine disputes of material fact exist, including, but not limited to, issues of ratification, estoppel, waiver, and agency. Each of these issues are highly fact-intensive, require development during discovery, and should be decided by the finder of fact at trial (or, at the very earliest, on summary judgment after the opportunity for discovery). Accordingly, for the reasons set forth above, Atlantic Specialty's Motion should be denied.

*[signature page follows]*

Dated: June 9th, 2021

/s/ Douglas A. Winegardner
Douglas A. Winegardner (VSB No. 46570)
Robert B. Delano, Jr. (VSB No. 20619)
Sands Anderson, PC
Bank of America Center, Ste. 2400
1111 East Main Street (23219)
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone:	(804) 648-1636
Facsimile:	(804) 783-7291
dwinegardner@sandsanderson.com
rdelano@sandsanderson.com

-AND-

/s/ W. Spencer King
**HENRY A. KING (LA #7393)**
**MICHAEL L. VINCENZO (LA #23965)**
**W. SPENCER KING (LA #35863)**
**KING & JURGENS, LLC**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
Email:
hking@kingjurgens.com
mvincenzo@kingjurgens.com
sking@kingjurgens.com

***Attorneys for Defendant/Third-Party Plaintiff Bogdan Bindea***

# CERTIFICATION

I hereby certify that on the 9th day of June, I electronically filed the foregoing with the Clerk of the Court using the CM/EMC system, which will send a notification of such filing (NEF) to the following:

David N. Ventker, Esq. (VSB No. 29983)
Marrisa M. Henderson (VSB No. 44156)
Ventker Henderson, PLLC
256 West Freemason Street
Norfolk, VA 23150
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com
*Counsel for Plaintiff*

James W. Walker, Esq. (VSB No. 29257)
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
*Jwalker@ohaganmeyer.com*
*Counsel for USG Ins. Services, Inc.*

and

Jeffrey R. DeCaro (VSB No. 35572)
3050 Chain Bridge Road, Suite 300
Fairfax, VA 22030
jdecaro@decarodoran.com
*Counsel for ASAP Insurance Co.*

                                              /s/   Douglas A. Winegardner
                                              Douglas A. Winegardner (VSB No. 46570)
                                              SANDS ANDERSON PC
                                              Bank of America Center, Ste. 2400
                                              1111 East Main Street (23219)
                                              P. O. Box 1998
                                              Richmond, VA 23218-1998
                                              Telephone:  804-648-1636
                                              Telefax:  804-783-7291
                                              dwinegardner@sandsanderson.com