UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division – In Admiralty

**ATLANTIC SPECIALTY INSURANCE COMPANY,**

    Plaintiff,

v.                                                                        Civil Action No. 3:21-cv-00002

**BOGDAN ANDREI BINDEA, et als.**

    Defendant, Third Party Defendants

**PLAINTIFF'S REPLY TO BOGDAN ANDREI BINDEA'S
OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

For its reply to Defendant/Counterclaim Plaintiff Bogdan Andrei Bindea's ("Bindea") Opposition to Motion for Judgment on the Pleadings (D.E. 45, "Opposition Brief"), Plaintiff/Counterclaim Defendant, Atlantic Specialty Insurance Company ("ASIC"), states as follows:

**I.   STATEMENT OF THE CASE**

ASIC advanced four separate reasons to support its motion for judgment on the pleadings: 1) there was no contract because there was no meeting of the minds; 2) ASIC was not bound by the insurance contract because it was fraudulently induced to issue the policy; 3) Bindea breached his duty of utmost good faith to ASIC as required by the doctrine of *uberrimae fidei*, so the policy was void *ab initio;* and 4) even if the policy was binding on ASIC, Bindea breached essential terms of the contract. Bindea has chosen to simply ignore a number of ASIC's arguments and miscast others, has attempted to create factual disputes where none exist, and has misstated other facts that are plainly not in dispute. He has offered nothing to show why this case should be allowed to proceed to trial rather than resolved on the merits at this juncture.

1

## II. ARGUMENT

**A. Bindea Has Conceded There Was No Meeting Of The Minds**.

In its very first argument in its Memorandum in Support of its Motion for Judgment on the Pleadings (D.E. 36, "Opening Brief"), ASIC plainly and directly argues no contract was formed because there was no meeting of the minds between the parties. *See* Opening Brief at 8, 9. Bindea has simply chosen to ignore this argument, incorrectly stating that "Atlantic Specialty first seeks dismissal on the basis that no valid contract was ever formed because the Policy was procured by fraud." Opposition Brief at 9.

When a party ignores an issue in his briefing, he has waived that issue. *Daugherty v. Adams*, 2019 U.S. Dist. LEXIS 200436, *39, 40, 2019 WL 7987859 (W.D. Pa. Nov. 15 2019) ("[W]aiver occurs if plaintiff has an opportunity to make an argument in response to defendant's motion to dismiss and fails to do so."); *Strauss v. Angie's List, Inc.*, 2019 U.S. Dist. LEXIS 15425 *7, 8, 2019 WL 399910 (D. Kan. Jan. 31, 2019) (Plaintiff failed to respond to defense of laches asserted by defendant in support of Rule 12(b)(6) motion to dismiss and therefore waived the issue); *GPNE Corp. v. Apple Inc.*, 108 F.Supp 3d 839 (N.D. Cal. 2015) (failure to raise arguments in briefing constitutes a waiver of those arguments); *Quillen v. Astra* 2011 U.S. Dist LEXIS 252, *16, 2011 WL 9004 (E.D. Tenn. Jan. 3, 2011) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed [argumentation] are deemed waived").

**B. Bindea Misunderstands The Argument Of Fraudulent Inducement.**

Bindea argues that because he has not sued his agents, Uhr, ASAP and USG, for intentional fraud, ASIC cannot sue Bindea on a claim of fraudulent inducement to enter a contract.[1] This logic

---

[1] Bindea is also incorrect about the nature of his claims against his agents, inasmuch as the elements of a claim of negligent misrepresentation (Count IV of the Third-Party Complaint) are essentially the same as the elements of a claim of constructive fraud. *White v. Potocska,* 589 F. Supp. 2d 631,644 (E.D. Va. 2008).

2

escapes us. The legal theories Bindea chooses to assert, or not to assert against his agents, are not relevant to any claims ASIC may have against *him*. What is relevant are the *factual representations* Bindea has made in his pleadings.

Bindea is attempting to avoid the implications of the factual allegations in his pleadings. In his opposition brief, he characterizes the insurance applications submitted to ASIC as containing "a number of objectively incorrect statements." Opposition Brief at 9. In his Answer, Affirmative Defense, Counterclaim and Third-Party Claim (D.E. 6, "Responsive Pleading") however, he affirmatively states the applications "make materially inaccurate and false statements regarding the intended operational territory of the vessel and the number of crew" and they "also contain materially inaccurate or false information on other matters" D.E. 6 at ¶ 26. Nowhere does Bindea deny, nor can he, that ASIC was induced to enter into an insurance with contract by the false applications. Appearing just above the place where Bindea's signature appears is a cautionary paragraph about the consequences of misrepresentations which says, among other things, "it is my/our understanding that Underwriters shall rely upon the information and representations listed above….", Exhibit D to the Complaint at ASIC0092, and the contract itself expressly states that it is issued in reliance on the information provided to it by Bindea. Opening Brief at 9, 10. The Declarations Pages to the Policy, D.E. 1-7, Exhibit G, at ASIC 0002-0005, further expressly incorporate this information into the policy. Because these are undeniably material misrepresentations of fact by Bindea or his agents, with detrimental reliance by ASIC, this is sufficient to void the contract. *See B-W Acceptance Corp. v. Benjamin T. Crump Co., Inc.,* 199 Va. 312, 315 (1957) ("The intent of the party making the representation is immaterial. The point is whether the other party was misled. Whether the representation is made innocently or knowingly, the effect is the same. In the one case the fraud is constructive; in the other it is actual."); *Saunders*

*v. Gen'l Servs. Corp.,* 659 F. Supp 1042, 1055 (E.D. Va. 1987) ("Virginia law provides a cause of action for fraud acting as an inducement to entering a contract …. Such fraud may exist based on the suppression or concealment of true facts, as well as on the affirmative representation of a false set of facts."). However the insurance applications are characterized, there is no dispute the information contained in them was false. Bindea does not challenge that ASIC relied on the applications to issue the insurance contracts. This is, frankly, a textbook fraudulent inducement claim.

### 3. Bindea Misunderstands The Law Of *Uberremae Fidei*.

Bindea mounts perhaps his most vigorous attacks on ASIC's argument that he breached the duty of utmost good faith to ASIC under the doctrine of *uberrimae fidei.* None of the authorities upon which he relies support his position because he has either misstated or overlooked well-established law on point.

The first issue is Bindea's strenuous reliance on the doctrine of estoppel and waiver. It is true these defenses can be asserted with respect to ordinary marine contracts. Marine insurance contracts, however, are different, and it has been established that estoppel and waiver are *not* recognized as defenses to the breach of the duty of utmost good faith owed by the insured to his insurer. The case most cited by the courts on this point is *HIH Marine Servs. v. Fraser* out of the Eleventh Circuit, where the court of appeals was dealing with the very defenses asserted by Mr. Bindea as the result of an action by a marine insurer to have the policy declared void as a result of material misrepresentation and omissions by the insured in the application process. In rejecting the defenses of estoppel and waiver, the court said:

> [W]e focus on the issue of material representation because a finding of material representation in this marine insurance case voids the policy and renders immaterial the appellant's arguments on insurable interest and estoppel.

*HIH Marine Servs. e. Fraser,* 211 F.3d 1359, 1361 (11th Cir. 2000). *See Markel Am. Ins. Co. v. Dolan,* 2012 U.S. Dist. LEXIS 167468, *23, 24, 2012 WL 5906401 (N.D. Ill. Nov. 26, 2012) (estoppel and waiver do not bar voiding of the policy under the doctrine of *uberrimae fidei*); *Certain Underwriters at Lloyds, London v. Gore*, 27 F. Supp 1306, 1309 (S.D. Fla. 1998)("[U]*berrimae fidei* does not permit the use of the principles of waiver and estoppel to provide coverage where there has been a material misrepresentation on the application."); *Acadia Ins. Co. v. Allied Marine Transp. LLC*, 151 F. Supp. 2d 107 (D. Me. 2001) (estoppel and waiver rejected as defenses to a declaratory judgment action premised on material misrepresentations by the insured).

Bindea cites several times to the summary judgment decision of the district court in *QBE Seguros v. Morales-Vazquez*, 2017 U.S. Dist. LEXIS 189273, *32, 2017 WL 547458 (D. P.R. Nov. 14, 2017), without making any reference to the decision of the First Circuit Court of Appeals affirming the results of the trial that followed. *See QBE Seguros v. Morales-Vazquez*, 986 F.3d 1, 10 (1st Cir. 2021). The district court opinion denying summary judgment is, frankly, inapposite, because unlike the instant case, there was a dispute about whether the insurer had actual knowledge of the material facts at issue *before* it issued the policy. In denying the insurer's motion for summary judgment, the district court said:

> Morales' evidence that QBE knew of his fifteen years of boating experience … creates a genuine dispute as to whether QBE knew that the information Morales provided on the QBE Application regarding his prior boating experience was incorrect and yet chose to issue the policy anyway.

After a six day bench trial, the district court ruled in favor of QBE, and Morales appealed. ASIC has cited to the First Circuit's decision several times in its Opening Brief. However, given the reliance Bindea places on the district court decision, it is odd that he has overlooked this conclusion from the Court of Appeals: "[W]aiver and estoppel may operate as affirmative defenses to a claim

5

that an insured has committed a breach of a policy warranty …, and Morales asserts them here. But he develops no argument on appeal that these defenses apply against the doctrine of *ubberimae fidei*." *QBE Seguros v. Morales-Vazquez*, 986 F. 3d 1, 10 (First Cir. 2021). Indeed, in every *ubberimae fidei* case, the premium was paid by the insured; otherwise the insurer would simply cancel the policy for non-payment of the premium. If a policy is void *ab initio* because of a material misrepresentation, then the policy never entered into force, and there never was any coverage. Trying to resurrect a policy that does not exist by estoppel and waiver is impossible.

Bindea places substantial reliance on the payment of premiums by Bindea to ASIC. He has nowhere alleged, either in his pleadings or in his Opposition Brief, that ASIC continued to accept premiums *after* it learned of the materially false statement in the insurance applications.[2] Without those predicate facts, he has failed to plead sufficient facts to support a defense of either estoppel or waiver even if the defenses were available to him, and they are not.

Bindea cites to two decisions from California state courts to argue that an application is not actually required to create an insurance contract. Both decisions focus intently on the requirements of California law, not maritime law, and Bindea misstates their holdings.

In *Kincer v. Reserve Ins. Co.,* 11 Cal App. 32 714, 90 Cal. Rptr. 94 (Ct. App. 1970), Mr. Kincer called an agent for Reserve Insurance Co. to purchase a policy of automobile insurance. The agent was under contract with Reserve, and the court plainly states the agent was an agent of *Reserve*, and not Mr. Kincer's agent. The agent completed the application for Mr. Kincer, and the agent signed Mr. Kincer's name to it. There was an accident, and Mr. Kincer made a claim under the uninsured motorist coverage in the policy. Reserve sued to have the policy declared invalid

---

[2] Nor could he make such representations. As was disclosed to Bindea's counsel during the scheduling conference with the Court on May 26, 2021, the premium has been refunded by ASIC.

because it was not signed by Mr. Kincer, and further argued Kincer had waived uninsured motorist coverage. The California Court of Appeals said: "Defendant initially maintains that there was no binding contract of insurance because the application form was forged and no premium was ever charged for uninsured motorist protection. This argument is completely without merit. The plaintiff requested complete coverage except collision and medical. The fact that he did not sign the application *and someone else did* is immaterial." *Id.* at \*718 (emphasis added). The court further noted that uninsured motorist coverage is required by California law to be included in all automobile policies unless the insured and insurer follow proper procedures as defined by statute for declining such coverage. Those procedures were not followed by Reserve.

The second California case, *Meyer v. Johnson*, 7 Cal. App. 2d 604, 46 P.2d 822 (Cal Ct. App. 1935), is as inapplicable as *Kinser* and deals with the efforts of a "murdering heir" to collect on a life insurance policy. Granville Johnson was married to Hazel Johnson. Mr. Johnson induced his wife to take out a life insurance policy on herself naming him as the beneficiary. The policy was solicited by an agent *of the insurance company*. The agent left two blank forms with Mr. Johnson. Mr. Johnson returned two forms to the agent, one filled out in pencil in the apparent handwriting of Mrs. Johnson, and one that was blank except it contained Mrs. Johnson's apparent signature in ink. Mr. Johnson murdered Mrs. Johnson and was serving a life sentence. As a murdering heir, he could not collect under the policy, but Mrs. Johnson's other family members made a claim. The carrier sought to deny coverage by claiming Mrs. Johnson's signature was forged by Mr. Johnson. The trial court found the documents had been forged by Mr. Johnson, who was the named beneficiary. The other evidence, however, was that Mrs. Johnson voluntarily underwent the required insurance physical and signed the medical forms as "the insured." She was also visited by an inspector working for the agent to confirm medical details about the application,

7

and she completed paperwork regarding the application in his presence. The court on appeal found that the evil motives of Mr. Johnson in persuading his wife to procure the policy were irrelevant to whether there was a contract of insurance between the insurer and Mrs. Johnson, the insured:

> The foregoing resume of the evidence with reference to the medical portion of the application being *undisputed*, it can hardly be urged that the deceased did not know that she has an application for life insurance pending and that she did not know who the soliciting agent was. If the deceased knew that she was applying for insurance and intended to do so in good faith, it would make no difference, so far as the validity of the application is concerned, whether the name signed on to part one of the proposal portion of the application was her signature or not."

*Id.* at 617 Cal. App 2d 604, 611, 46 P. 2d 822, 825. No fair reading of either *Kincer* or *Meyer*, then, can find any support for Bindea's statement that "an insurance application is not always required to create a valid contract of insurance." Opposition Brief at 10.

Bindea also places unusual reliance on a Certificate of Insurance, Exhibit A to his Responsive Pleading. This document was unknown to ASIC until it was filed with the Court. It contains the typed name and hand-printed signature of John Uhr, but nowhere is there any suggestion that it was prepared, signed, authorized, or issued by ASIC, nor does Bindea make any such allegation. The caption at the very top of the certificate also states quite plainly and in bold letters:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVES OR PRODUCER, AND THE CERTIFICATE HOLDER.**

Immediately beneath the block containing Bindea's name and address, this language appears:

> THIS IS TO CERTIFY THAT THE *POLICIES OF INSURANCE LISTED BELOW* HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS

AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY CLAIMS.

The policy number on the Certificate, MGL2451933-0, is *not* the same as the number on the policy issued by ASIC, B5JH04214. *See* Exhibit G to the Complaint. Nowhere on the face of this Certificate is there any hint that the Vessel was insured for operations in Haitian Waters. Nowhere on the face of this Certificate is there a hint the Vessel was insured for operations with seven crew members. Nowhere on the face of this Certificate is there a hint the Vessel was insured for operations in violation of U.S. law. There is no language anywhere on the Certificate, other than monetary figures and the number of a nonexistent policy, defining the terms of this supposed insurance contract that Bindea claims came into place when he paid the premium after receiving the Certificate. There is not even any information regarding the amount of the premium to be paid. Whatever this document is, because it was not issued by ASIC (and Bindea very carefully avoids claiming ASIC authorized creation of the Certificate), it has no bearing on whether there is a binding contract of insurance between Bindea and ASIC.

Bindea also has the arguments exactly backwards related to whether there are applications that support the existence of an insurance contract. Unlike the cases to which he cites wherein it is the *insurer* who challenges the insurance applications based on invalid signatures, here it is the *insured* who wishes to ignore the insurance applications completely. Bindea appears to argue there is a valid policy of insurance between him and ASIC that was created simply by operation of his payment of insurance premiums, with unspecified terms or conditions of any kind other than what was in the certificate of insurance prepared for him by his agent, John Uhr. ASIC, however, does not seek to deny coverage because there were no applications or because Bindea's signatures were forged. Instead, there is no coverage because ASIC received applications containing false statements of fact submitted by people who Bindea has affirmatively alleged were his agents, and

9

it relied on those applications to issue an insurance contract. Because the applications submitted, either by Bindea or on his behalf, contain materially false statements of fact by his own admission, the contract that was issued is void. Bindea argues ASIC is bound to insure Bindea for operations in Haiti with an excess of unlawful crew and for a Vessel worth $200,000 more than the value of the Vessel listed on the applications simply because he told *his* agents that is the coverage he wanted. Nowhere in his Responsive Pleading or even in his Opposition Brief does he make any claim or suggestion this information was ever provided to ASIC (it was not).

Bindea offers no evidence or argument ASIC had any idea he would be operating in Haitian waters with a crew of seven and in violation of U.S. law, or that he desired hull coverage on the Vessel in the amount of $600,000. In fact, he expressly alleged the contrary to be the case in his Third-Party Complaint:

> 65. In addition, Third-Party Defendants negligently misrepresented to Atlantic Specialty, *inter alia,* that the Vessel would operate of the east coast of Florida, would maintain a maximum of three crew members during operations. On information and belief, Third-Party Defendants negligently misrepresented to Atlantic, the amount of Hull and Machinery coverage requested by Bindea.

Responsive Pleading, at 20. Bindea does not allege anywhere that anyone ever disclosed to ASIC that this information was incorrect or that he would be operating unlawfully in Haiti.

**4. There Are No Triable Issues Of Fact.**

ASIC admits to being puzzled by Bindea's arguments that there are triable issues of fact precluding judgment on the pleadings. His arguments here are directly contrary to the admissions in his own pleading and directly contrary to long-standing principles of existing law.

Bindea criticizes ASIC for not asking whether he intended to operate the Vessel in violation of US law. He is correct, there is no such question in the applications, just as there is no

question about whether he intends to smuggle drugs, or provide passage for undocumented immigrants, or intentionally overload the Vessel – there are literally thousands of such questions that could go on an application in an impossible effort to ferret out every conceivable aspect of a risk. He further argues that even if the failure to disclose this fact breaches the policy, it applies to only the P&I portion and not the Hull Damage coverage. As ASIC noted in its Opening Brief, the P&I policy indeed contains an express exclusion for operations in violation of law. Nothing about that language, however, relieved Bindea of the obligation to disclose his intention to operate unlawfully with respect to coverage under any part of the policy. If the captain of the Vessel commits an illegal act, even without the owner's knowledge, during a voyage that causes injury to someone else, the P&I exclusion means there is no coverage for a claim arising from that injury. This in no way means that an insured such as Bindea who intends to operate a vessel unlawfully as part of his business plan is not obligated to disclose this fact to the insurer when applying for the policy, even if the insurer never asks.

Indeed, as has been significantly discussed above and in ASIC's Opening Brief, the courts are clear that under the general maritime law that in applying for a policy of marine insurance, Bindea had an affirmative obligation to voluntarily disclose to ASIC *any* fact that *might* be relevant to ASIC's decision to insure the risk, and to determine the premium to be charged, *even if ASIC did not first ask for the information.* Once again, *see Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510-11 (1883) ("It is the duty of the assured to place the underwriter in the same situation as himself; to give him the same means and opportunity of judging the value of the risks; and when any circumstance is withheld, however slight and immaterial it may have seemed to himself that, if disclosed, would probably have influenced the terms of insurance, the concealment vitiates the policy.") (quotation omitted).

Bindea simply ignores ASIC's argument that the duty to disclose exists not only as a matter of the general maritime law, but also as an express term of the written contract. As set forth in ASIC's Opening Brief, Coverage Section V, General Conditions For Coverage Applicable to All Coverage Sections, includes further limits on the scope of Coverage:

> 6. **Concealment, Misrepresentations or Fraud**
> This Insurance Policy shall be void as to all interests insured if, whether before or after a loss, any insured hereunder has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein, or in case of any fraud or false swearing by any insured hereunder relating thereto.

Exhibit G to the Complaint at ASIC 0044. This clause applies to the entire policy, not just the P&I coverage. Even if *uberrimae fidei* were not the law, it has been incorporated into and made an express part of the contract. Because he failed to disclose the intent to operate the Vessel in direct violation of law (among other things), any insurance contract between Bindea and ASIC was rendered void from the outset.

Without any citation to authority whatsoever, Bindea further goes out on a limb and claims: "To prevail on voiding coverage based on the use of a Haitian captain, Atlantic Specialty will be required to demonstrate that (1) Bindea had ***knowledge*** that such an act was unlawful, and (2) that use of a Haitian licensed captain in Haitian waters was a factor in the Incident…." Opposition Brief at 13. The is a complete misstatement of existing law and twists the entire basis of ASICS's claim.

The cause of the accident is completely irrelevant to the question of whether there was coverage. The sole question relates to the failure by Bindea, either directly or through his agents, to disclose what he, himself has alleged are material facts to ASIC that would have had a direct

bearing on its decision to issue a policy of marine insurance and, if so, what premium to charge. Had Bindea disclosed to any marine insurance underwriter anywhere that he intended to operate the Vessel in Haitian waters in violation U.S. law with a foreign captain, and thereby expose the Vessel to the risk of being seized by the US Coast Guard, literally no one would have agreed to insure the risk.[3] The question of causation of the accident simply has no bearing on this issue.

More distressing is the assertion that ASIC bears the burden of proving Bindea had knowledge that he was operating in violation of the law. There is simply no basis in the law for making such an argument. The law is exactly the opposite – Bindea is *presumed* to know the law, and ASIC had the right to assume that he knows the law. This is not a complicated legal principle, it is high school civics. As the District of Maryland explained in a maritime lien case some time ago:

> It has frequently been stated that all persons are presumed to know the law of the land, regardless of whether the law involved is state or federal. *See generally, Lawder v. Stone*, 187 U.S. 281,293, 23 S. Ct. 79, 47 L. Ed. 178 (1902); *Parsons v. District of Columbia*, 170 U.S. 45, 50-51, 18 S. Ct. 521, 42 L. Ed. 943 (1898); *United States v. Realty Co.*, 163 U.S. 427, 437-39, 16S. Ct. 1120, 41 L. Ed. 215 (1896); and *Banigan v. Bard*, 134 U.S. 291,295, 10 S. Ct. 565, 33 L. Ed. 932 (1890). Perhaps one of the most commonly recognized truisms of American legal jurisprudence is that ignorance of the law does constitute a proper defense. *Edwards v. United States*, 334 F.2d 360, 366 (5th Cir. 1964), Cert. denied, 379 US. 1000, 85 S. Ct. 721, 13 L. Ed. 2d 702 (1965). More importantly, parties engaging in business or commercial transactions are conclusively presumed to know the law. *See, e.g., Mammoth Oil Co. v. United States*, 275 U.S. 13, 48 S. Ct 1, 72 L. Ed. 137 (1927).

*Jet Line Services, Inc. v. M/V Marsa El Hariga,* 462 F. Supp. 1165, 1175-76 (D. Md. 1978). *See Marion Autoparts, Inc. v. United States* 1980 U.S. Dist LEXIS 11794, *8; U.S. Tax Cas. (CCH p9467 (W.D. Va. 1980) (a person is presumed to know the law and defendant should have known better than to believe an I.R.S. agent when he said no taxes were owed); *In re Campbel,* 124 F. 417,

---

[3] If the instant motion is not successful, evidence on summary judgment or at trial would show that had accurate disclosures been made by Bindea no policy would ever have been issued here because ASIC refuses to offer coverage to any vessels operating in Haiti.

421 (W.D. Va. 1903) (a debtor in bankruptcy was presumed to know the law that he could not claim certain property as exempt under the bankruptcy code).

In the end, however, and as discussed at some length above, ASIC has no obligation to prove any more than that it was provided materially false information by Bindea or by someone acting on his behalf. Bindea's knowledge about the law is as irrelevant as his motive and intent.

Bindea closes by arguing there is a triable issue of material fact as to whether his agents, Uhr, ASAP, and USG, were in fact agents for ASIC. This is an issue manufactured out of whole cloth. The Third-Party Complaint in Bindea's Responsive Pleading contains four separate counts alleging Uhr, ASAP, and USG breached duties, including fiduciary duties, which they owed to him. Nowhere in the factual statements in his Responsive Pleading, and especially nowhere in his Counterclaim against ASIC or in his Third-Party Complaint against Uhr, ASAP, or USG, does Bindea make even a single allegation that either Uhr, ASAP, or USG were acting as agents of ASIC, or that ASIC is bound otherwise by their actions. As noted above, Bindea affirmatively alleges his agents deceived ASIC to obtain coverage for him. It is also telling that Bindea, even while claiming there is a triable issue of fact as to agency, does not specify the factual basis for such a dispute anywhere in his Opposition Brief.

Finally, Bindea's constant complaints that ASIC did not track him down, perhaps by special courier, while he was either travelling to or working in Haiti to ensure the policy was placed in his hands are unpersuasive. There is no evidence ASIC had any idea Bindea was in Haiti. The Certificate of Documentation for the Vessel was delivered to Bindea by the United States Coast Guard to his address at 1065 Tilmon Road, Charlottesville, Virginia 22901. Both insurance applications submitted by him or on his behalf state his address is 1065 Tilmon Road, Charlottesville, Virginia 22901. The Certificate of Insurance upon which he places so much reliance was addressed to him at

1065 Tilmon Road, Charlottesville, Virginia 22901. The insurance policy was mailed to him at 1065 Tilmon Road, Charlottesville, Virginia 22901. He was served with the summons and complaint in this matter at 1065 Tilmon Road, Charlottesville, Virginia 22901. D.E. 4. And, if that were not enough, he specifically alleges in paragraph 8 of his Counterclaim and Third-Party Complaint that ASIC is subject to personal jurisdiction in this Court because it sells insurance in Virginia, "*including the marine insurance policy that was delivered to Bindea in Virginia that is the subject of its declaratory judgment action.*" He repeats this very same allegation of fact in paragraph 9 in an effort to bolster a claim of personal jurisdiction over the Third-Party Defendants. He is bound by these affirmative statements of fact in a pleading he has filed with this Court in this action. Apparently, though, Bindea believes ASIC should have known that Bindea was not home to receive the mail and that he had made no arrangements to have the mail forwarded to him in Haiti, and so it apparently should have made special arrangements to look for him and put the policy in his hands. This is something the law simply does not require.

### III. CONCLUSION

Bindea has failed to address some arguments made by ASIC and as a consequence has waived any objection to ASIC's position. He has misstated the law and tried to manufacture factual disputes that do not exist in a wholesale effort to avoid being bound by the admissions of fact in his Responsive Pleading. There are no factual disputes and the governing law speaks plainly as to the meaning of those facts that have been admitted. Judgment on the Pleadings in favor of ASIC is warranted and appropriate.

Respectfully submitted on June 16, 2021.

**ATLANTIC SPECIALTY INSURANCE COMPANY,**

By: /s/ David N. Ventker
     Of Counsel

David N. Ventker (VSB No. 29983)
Marissa M. Henderson (VSB No. 44156)
Ventker Henderson, PLLC
256 West Freemason Street
Norfolk, Virginia 23510
Telephone: 757.625.1192
Facsimile: 757.625.1475
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Atlantic Specialty Insurance Company*