IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division – In Admiralty

| | | |
|---|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, | ) ) | |
|     Plaintiff & Counter Defendant, | ) ) | Civil Action No. 3:21-cv-00002 |
| v. | ) ) | |
| BOGDAN ANDREI BINDEA, | ) | |
|     Defendant & Counter Claimant. | ) | MEMORANDUM OPINION |
| BOGDAN ANDREI BINDEA | ) | |
|     Third-Party Plaintiff, | ) ) | By:   Joel C. Hoppe |
| v. | ) ) |          United States Magistrate Judge |
| USG INSURANCE SERVICES, et al., | ) | |
|     Third-Party Defendants. | ) | |

This case initially involved a dispute over whether a marine insurance policy issued by Plaintiff Atlantic Specialty Insurance Company ("Atlantic Specialty" or "ASIC") to Defendant Bogdan Bindea, as owner of the supply vessel "M/V Bob Rouse," covered Bindea's claimed Loss sustained when the Vessel capsized in Haitian waters. *See Atl. Specialty Ins. Co. v. Bindea*, No. 3:21cv2, 2022 WL 4756255, at *1 (W.D. Va. Sept. 30, 2022) (published opinion). ASIC filed this civil action in admiralty seeking declaratory judgment that the Policy was not an enforceable contract, or, alternatively, that the Policy did not cover Bindea's claimed Loss because the contract's terms expressly suspended all coverage while the Vessel was not "within the east coast of Florida." *See* ASIC Compl. (citing 28 U.S.C. § 1333; Fed. R. Civ. P. 9(h)), ECF No. 1.[1] Bindea filed a counterclaim against ASIC seeking declaratory judgment that the Policy

---

[1] ASIC's complaint invoked the federal diversity statute, 28 U.S.C. § 1332, as an "alternative" source of this Court's original jurisdiction over the coverage dispute, ASIC Compl. ¶ 4, but it did not allege facts showing either that ASIC and Bindea were citizens of different states, 28 U.S.C § 1332(a)(1), or that the amount in controversy exceeded $75,000. *See generally* ASIC Compl. ¶¶ 5–6; Civ. Cover Sheet, ECF No.

fully covered his claimed Loss, even though he never agreed to the Policy's navigational limits, and he admitted that the Vessel was roughly 500 nautical miles from Florida's "east coast" when it capsized. *See generally* Answer & Countercl. 1–9, 12–18 (Count I), ECF No. 5; *Bindea¸* 2022 WL 4756255, at *2 n.6, *11.

ASIC moved for judgment on the pleadings, ECF No. 35, asking only that the Court enter judgment in ASIC's favor on its own claim that "*no* coverage is owed" to Bindea for the Loss. *See* ASIC Br. in Supp. Mot. J. on Pleadings 1 (emphasis added), ECF No. 36. The Court granted ASIC's motion in September 2022. ECF No. 72; *see Bindea*, 2022 WL 4756255, at *12 ("The Court finds there are no disputed material facts bearing on the parties' coverage dispute and that ASIC is entitled to judgment as a matter of law that it is not obligated to cover Bindea's claim for the Loss at issue."). Neither party filed a dispositive motion as to Bindea's counterclaim that coverage *is* owed to him for the same Loss. The Court has original jurisdiction over that claim under 28 U.S.C. § 1333. *See Flame S.A.*, 762 F.3d at 362; *J.J. Ryan & Sons*, 369 F. Supp. at 693.

Bindea also filed a third-party complaint asserting four tort claims against Third-Party Defendants John Uhr, ASAP Insurance Agency ("ASAP"), and USG Insurance Services ("USG"). *See generally* Countercl. & Third-Party Compl. ¶¶ 3–5, 7, 9, 12–22; *id.* ¶¶ 50–54 (Count II, negligence); *id.* ¶¶ 55–59 (Count III, breach of fiduciary duty); *id.* ¶¶ 60–66 (Count IV, negligent misrepresentation); *id.* ¶¶ 67–73 (Count V, negligent failure to warn), ECF No. 5.

---

1-8. Accordingly, the Court's statutory authority to entertain ASIC's declaratory judgment action against Bindea rested solely on 28 U.S.C. § 1333, which gives federal district courts original jurisdiction in "[a]ny civil case of admiralty or maritime jurisdiction." *See Flame S.A. v. Freight Bulk Pte. Ltd.*, 762 F.3d 352, 362 (4th Cir. 2014) ("[M]arine insurance contracts are usually maritime contracts as a matter of law." (citing *Ins. Co. v. Dunham*, 78 U.S. 1, 30–36 (1870)); *J.J. Ryan & Sons, Inc. v Continental Ins. Co.*, 369 F. Supp. 692, 693 (D.S.C. 1974) (noting the "well established" principle that "a contract of maritime insurance is a contract within the admiralty jurisdiction of the federal district courts" (citing *Dunham*, 78 U.S. 1)).

2

The matter is now before the Court on USG's motion to dismiss Bindea's third-party complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 28.

## I. Background[2] & Procedural History

Bindea owns the offshore supply vessel "M/V Bob Rouse." Countercl. & Third-Party Compl. ¶ 12. On January 23, 2020, Bindea contacted John Uhr and ASAP to help him procure "hull and machinery coverage" and protection and indemnity ("P&I") coverage for the Bob Rouse so the Vessel could be used for "humanitarian relief operations in and around Haiti." *See id.* "Bindea and Uhr subsequently exchanged numerous telephone calls and text messages" about this insurance. *Id.* ¶ 13. Those communications occurred while Bindea was aboard the Bob Rouse "transiting [first] from Louisiana to Florida" and then "from Florida to Haiti," or while Bindea was "on land in Haiti." *Id.* "During his multiple communications with Uhr and ASAP, Bindea advised that the Vessel would be primarily engaged in humanitarian relief operations in and around Haiti." *Id.* Having conveyed that information to Uhr, Bindea expected that "the coverages obtained by Uhr and ASAP would be consistent with the Vessel's area of operations and mission." *Id.* ¶ 14. Before November 2020, "and consistent with [Bindea's] earlier advices to Uhr and ASAP, the Vessel was primarily used by Bindea in support of humanitarian relief work performed by Bindea and companies he [was] affiliated with in Haiti." *Id.* ¶ 15.

---

[2] The facts in this section come from Bindea's combined Answer, Counterclaim & Third-Party Complaint, ECF No. 5; the "Certificate of Liability Insurance" attached as Exhibit A to that pleading, ECF No. 5-2; and certain documents attached as exhibits to ASIC's Complaint that are both authentic and integral to Bindea's claims against Third-Party Defendant USG, *e.g.*, Countercl. & Third-Party Compl. ¶¶ 24, 26, 53, 58 56 (referencing ASIC Compl. Exs. D, F & G, ECF Nos. 1-4, 1-6, 1-7). *See* Fed. R. Civ. P. 10(c); *cf. Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that the court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the [Rule 12(b)(6)] motion to dismiss, so long as they are integral to the complaint and authentic"). All well-pleaded facts and any reasonable inferences drawn therefrom are presented in Bindea's favor as the nonmoving party. *See Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019).

Bindea believes that Uhr and ASAP engaged USG Insurance Services, a national wholesale insurance broker, to procure the "marine insurance coverages [Bindea] requested." *Id.* ¶ 16; *see also id.* ¶ 17 ("On information and belief, USG was fully aware that it had been utilized by Uhr and ASAP to procure marine insurance and coverages for the benefit of Bindea."). He alleges that "USG secured from Atlantic Specialty the marine insurance coverages that were requested by Bindea" and that on "March 20, 2020, Atlantic Specialty agreed to subscribe to a Commercial Marine Package policy (i.e., the 'Policy') which provided various types of marine insurance on the Vessel, including P&I and Hull & Machinery coverage to benefit Bindea." *Id.* ¶ 19; *see also id.* ¶ 24 (citing ASIC Compl. Ex. G, Commercial Marine Package Policy No. B5JH04214 (eff. Mar. 20, 2020–Mar. 20, 2021), ECF No. 1-7, at 1–49)). "The 'Producer' listed on the Policy was USG." *Id.* ¶ 20 (citing ASIC Compl. Ex. G, at 2).

The Policy (No. B5JH04214) names Bindea as the "insured" and lists the "M/V 'Bob Rouse'" as the covered Vessel for a period from March 20, 2020, to March 20, 2021. ASIC Compl. Ex. G, at 2–5 (Declarations); *see* Countercl. & Third-Party Compl. ¶¶ 19–20 (citing ASIC Compl. Ex. G). It provides coverage for (i) commercial marine liability, including vessel protection and indemnity, and (ii) hull physical damage. ASIC Compl. Ex. G, at 8; *see* Countercl. & Third-Party Compl. ¶ 19 (citing ASIC Compl. Ex. G). Each part "is subject to its own terms, conditions, exclusions and endorsements." ASIC Compl. Ex. G, at 8. Two such provisions are most relevant to Bindea's claims against USG. *See generally* Countercl. & Third-Party Compl. ¶¶ 24–29, 34–38, 63, 71–72 (citing ASIC Compl. Ex. G, at 4–5, 27–28, 36).

First, with respect to both liability and hull physical damage coverage, the Policy states "that the Vessel shall be confined to the Navigational Area described in the Declarations," and if the "[V]essel exceeds the Navigation Area, then all coverage herein is suspended until the

[V]essel safely returns to the Navigation Area." ASIC Compl. Ex. G, at 27, 36; *see* Countercl. & Third-Party Compl. ¶ 71. The Declarations define the Vessel's "Navigation Area" as "[w]ithin the east coast of Florida." ASIC Compl. Ex. G, at 5; *see* Countercl. &Third-Party Compl. ¶¶ 25, 29, 71. The Vessel itself was valued at and insured for $400,000. ASIC Compl. Ex. G, at 5; *see* Countercl. & Third-Party Compl. ¶¶ 53, 58 (alleging that the Third-Party Defendants breached duties owed to Bindea by, among other things, "failing to procure Hull and Machinery coverage in the amounts requested by Bindea and represented to him by Third-Party Defendants"); *id.* ¶ 63 (alleging that the Third-Party Defendants falsely represented to Bindea that the Policy "purported to provide $600,000 in Hull and Machinery coverage"); *id.* ¶ 69 (alleging that Uhr, ASAP, and USG "knew or should have known that the Vessel . . . had a requested insured value of $600,000"). Second, with respect to liability only, the Policy provides that

> the number of crew members employed aboard the insured vessel(s) at any one time shall not exceed the number shown on the Declarations page. In the event additional crew members are to be employed, the insured shall give prior notice to [ASIC] and pay such additional premium as is required. If the insured shall fail to give such prior notice at the time of loss in respects to crew there are more crew employed, this insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the loss.

Compl. Ex. G, at 28 ("Crew Coverage"). The Declarations allow three crew members onboard the Vessel at one time. *Id.* at 4; *see* Countercl. &Third-Party Compl. ¶ 36 (citing ASIC Compl. Ex. G, at 4).

In its Complaint, ASIC alleged that the Policy's "Navigation Area" and "Crew Coverage" restrictions were based on statements in a marine insurance application, allegedly signed by Bindea on January 27, 2020, and submitted to ASIC by someone acting on Bindea's behalf, seeking $1 million in coverage for the Bob Rouse and its three-person crew with "navigational limits required" for the "area around Florida." ASIC Compl. ¶¶ 17–18 (citing ASIC Compl. Ex. D, at 1–5 (P&I application), ECF No. 1-4). It also alleged that ASIC "received

an additional application form completed and signed by Bindea . . . dated January 29, 2020," *id.* ¶ 20 (citing ASIC Compl. Ex. F, at 1–13 (commercial marine package application), ECF No. 1-6), and it implied that this form supplemented the original application for coverage on the Bob Rouse, *see id.* ¶ 21; ASIC Compl. Ex. F, at 2. The only vessel listed on the second form's "Schedule of Covered Vessels," however, is the "Graig Michael" located at Ft. Lauderdale, Florida. ASIC Compl. Ex. F, at 6. The form describes the "Graig Michael" as a 110-foot steel-hull supply vessel built in 1977 and valued at $400,000.[3] *Id.* Nonetheless, it appears that ASIC treated this form as a supplemental application for coverage on the Bob Rouse, its three-person crew, and its marine operations "'delivering construction supplies'" at or around Ft. Lauderdale, Florida. ASIC Compl. ¶ 21 (quoting ASIC Compl. Ex. F, at 1–2). This supplemental application listed Bindea as the intended insured and sought coverage for both marine general liability (protection and indemnity) and "hull physical damage" in the amount of $400,000. ASIC Compl. Ex. F, at 1, 3, 6. Both the initial application and the supplemental appear to contain the wet signatures of "Bogdan Bindea." *See* ASIC Compl. Ex. D, at 5 (Jan. 27, 2020); ASIC Compl. Ex. F, at 13 (Jan. 29, 2020). "Bindea did not complete, sign, or submit" either application to ASIC on his own behalf. Countercl. & Third-Party Compl. ¶ 26.

Both applications contain "materially inaccurate and or false statements" about the Vessel's "intended operational territory,"—i.e., that it would operate around Ft. Lauderdale, Florida and not in Haitian waters—and "the number of crew required and intended to operate the Vessel." *Id.*; *see also id.* ¶¶ 27, 65. For example, Bindea never "advise[d] Uhr, ASAP, [or] USG .

---

[3] A survey attached to the original application likewise describes the Bob Rouse as a 110-foot steel-hull supply vessel built in 1977. ASIC Compl. Ex. E, at 1, ECF No. 1-5. It appears that Bindea changed the Vessel's name from "Graig Michael" to "Bob Rouse" after he acquired it in November 2019. *See* ASIC Compl. Ex. A, at 12–13, ECF No. 1-1.

. . that the Vessel would have only three crew members." *Id.* ¶ 37. He also asserts that Uhr, ASAP, and USG "knew or should have known that the Vessel . . . had a requested insured value of $600,000," *id.* ¶ 69, rather than the $400,000 reflected on the supplemental application, *see id.* ¶ 65 ("On information and belief, Third-Party Defendants also negligently represented to [ASIC] the amount of Hull and Machinery coverage required by Bindea."). Bindea contends that Uhr, ASAP, and/or USG "provid[ed] [this] inaccurate or false information [to ASIC] in connection with the application and [s]upplemental application," *id.* ¶¶ 53, 58 (citing ASIC Compl. Exs. D & F), and that ASIC relied on that information in issuing the Policy on the Bob Rouse, *see id.* ¶¶ 9, 18–19, 27, 29, 46, 63, 65 (citing ASIC Compl. Ex. G).

"On March 20, 2020, Uhr notified Bindea via text message that coverage had been bound on the Vessel. That same day, Uhr sent Bindea a screenshot of an email from Leigh Berry, a First Vice President of USG, in which Ms. Berry likewise confirmed that coverage had been procured and bound for the Vessel."[4] *Id.* ¶ 21. On March 24, Uhr sent Bindea a photo of a one-page "Certificate of Liability Insurance" stating that ASIC issued Policy Number "MGL2451933-0" providing Bindea up to $1 million in "general marine liability" coverage and $600,000 in "hull and machinery coverage" effective March 20, 2020, to March 20, 2021. Countercl. & Third-Party Compl. Ex. A, at 1, ECF No. 5-2. The certificate identifies the Bob Rouse as the "insured vessel" under this policy, but it does not list any "operations/locations" to which coverage applied. *Id.*; *see* Countercl. & Third-Party Compl. ¶ 22 (citing *id.* Ex. A).[5] Thus, Bindea believed

---

[4] Bindea's pleading does not include or otherwise describe the content of Uhr's text message or Ms. Berry's email.

[5] The certificate further states that it is "issued as a matter of information only," "confers no rights upon the certificate holder," "does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies below," and is "not a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder." *Id.* Uhr's name is written in the "Authorized representative" box.

that Uhr, ASAP, and USG had "secured from Atlantic Specialty the marine insurance coverages" that Bindea had requested, Countercl. & Third-Party Compl. ¶ 18, including for the Bob Rouse to operate in Haitian waters, *see id.* ¶¶ 14–15, 25. He does not deny that the Policy (B5JH04214) his agents *actually* secured from ASIC expressly suspends all coverage while the Vessel operated "outside of the east coast of Florida," *id.* ¶ 45 (citing Compl. Ex. G, at 27, 36 (quotation marks omitted)). *See, e.g.*, *id.* ¶¶ 19, 24, 27, 29, 34, 43, 46, 53; *accord Bindea*, 2022 WL 4756255, at *10–11.

On November 17, 2020, the Bob Rouse was sailing from Port-au-Prince, Haiti, to Môle Saint-Nicolas, Haiti. Countercl. & Third-Party Compl. ¶ 39. The ship hit rough waters, causing it to capsize ("the Incident"). *See id.* "On or about November 19, 2020, the same day that Bindea learned of the Incident, he provided notice of [the] same to Uhr and asked that Uhr immediately notify Atlantic Specialty of the Incident." *Id.* ¶ 40. Bindea later "made a claim to ASIC for insurance coverage as a result of the Loss."[6] *Bindea*, 2022 WL 4756255, at *1 (citing ASIC Compl. ¶ 13; Bindea Answer ¶ XIII (admitted)). In September 2022, this Court held that ASIC is not obligated to cover Bindea's claim for the Loss at issue. *Id.* at *12 (granting ASIC's Rule 12(c) motion).

\*

USG has moved to dismiss Bindea's third-party complaint under Rule 12(b)(6). ECF No. 28. First, it argues that Bindea cannot implead USG into ASIC's original declaratory judgment because Bindea's negligence claims against USG are not "derivative of the main claim" brought by ASIC. USG Br. in Supp. 4 (citing Fed. R. Civ. P. 14(a)), ECF No. 29. Put differently, because

---

[6] The pleadings do not specify the type or amount of coverage for which Bindea made the claim. *See Bindea*, 2022 WL 4756255, at *1 n.3.

ASIC simply sought to avoid covering Bindea's claimed Loss under the Policy—not to hold

Bindea "liable" for any damages—there is "no derivative 'liability' to pass through to USG." *Id.*;

*see also* USG Reply 2–3, ECF No. 44. Bindea responds that a Rule 12(b)(6) motion to dismiss is

the wrong way to challenge third-party impleader under Rule 14. *See* Bindea Br. in Opp'n 7–8

(citing Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it,

or to try it separately.")), ECF No. 38. He also notes that federal "courts have routinely allowed

impleader" under Rule 14(a) where, as here, the defendant-insured in a declaratory judgment

action (e.g., Bindea) alleges that a third-party insurance agent or broker (e.g., USG) "may be

liable to him" for damages if the plaintiff-insurer (e.g., ASIC) "prevails on the underlying

declaratory judgment action." *Id.* at 8–9 (discussing *Old Republic Ins. Co. v. Concast, Inc.*, 99

F.R.D. 566 (S.D.N.Y. 1983), and *Navigators Ins. Co. v. Univ. of Louisville Found., Inc.*, 329

F.R.D. 557 (W.D. Ky. 2019)); *see also id.* at 10 ("The core premise behind Bindea's claims

against the third-party defendants Uhr, ASAP, and USG is that, to the extend this Court finds

that the Policy does not afford coverage for the Incident, then the third-party defendants are

liable to Bindea for failure to procure the proper coverages for the Vessel.").

Second, USG characterizes Bindea's third-party complaint as seeking "declaratory

judgment" only—i.e., not compensatory damages—and urges the Court to decline jurisdiction

under 28 U.S.C. § 2201(a), because Bindea "can get complete relief in a traditional action at

law." USG Br. in Supp. 5–6. Bindea argues that the nature of relief sought against USG is not

"declaratory," but "coercive relief in the form of damages," Bindea Br. in Opp'n 11, in some

undefined "amount[] necessary to compensate Bindea for the losses sustained by the Vessel due

to the Incident," Countercl. & Third-Party Compl. 22 ¶ 4. *See* Bindea Br. in Opp'n 10–11.

Third, turning to the merits of Bindea's third-party claims, USG argues that Bindea's complaint does not plead facts showing that the Third-Party Defendants' alleged negligence was the "proximate cause" of Bindea's claimed damages. USG Br. in Supp. 6 ("Negligent breach of a duty is actionable only when it constitutes a proximate cause of the injury." (citing *S&C Co. v. Horne*, 235 S.E.2d 456 (Va. 1977)). According to USG, the "gravamen" of Bindea's three negligence claims is that the Third-Party Defendants misrepresented to ASIC that the Bob Rouse would operate around Ft. Lauderdale, Florida, which resulted in ASIC issuing a Policy that, unbeknownst to Bindea, did not protect Bindea from any losses sustained while the Vessel was in Haitian waters. *Id.* at 6–7; *see generally* Countercl. & Third-Party Compl. ¶¶ 12–30 (relevant factual allegations); *id.* ¶¶ 51–54 (Count II, negligence); *id.* ¶¶ 61–66 (Count IV, negligent misrepresentation); *id.* ¶¶ 68–73 (Count V, negligent failure to warn); *accord* Bindea Br. in Opp'n 10–11. USG asserts that "an *accurate* application would have revealed [Bindea's] intention to place the Vessel under command of a Haitian citizen in violation of federal law." USG Br. in Supp. 6 (citing 46 U.S.C. §§ 8103, 1213, 1215(b)(6); 46 C.F.R. § 15.720). Thus, it argues that Bindea cannot state a negligence claim against USG for failing to procure the insurance coverage that he wanted unless his complaint affirmatively alleges that such "coverage was available in the marketplace for a U.S. documented vessel operating in foreign waters with a foreign captain and crew." *Id.* at 7. Bindea responds, correctly, that "the insurance applications at issue did not inquire about the citizenship of the captain and the crew." Bindea Br. in Opp'n 13 (emphasis omitted); *see generally* ASIC Compl. Ex. D, at 1–5; ASIC Compl. Ex. F, at 1–13.

Finally, USG argues that because Bindea alleges "'nothing more than disappointed economic expectations assumed only by [USG's] agreement'" to procure marine insurance on Bindea's behalf, "'the law of contracts, not the law of torts, provides the remedy [under Virginia

10

law] for such economic losses." USG Br. in Supp. 7 (citing *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004)); *see id.* at 7–9. Bindea contends that his claims against USG sound in tort under Virginia law because they "seek[] recovery for property damage – namely, the total loss of the Vessel after the Incident." Bindea Br. in Opp'n 14–15 (citing *Filak*, 594 S.E.2d at 613); *see also id.* at 18–19 ("Here, Bindea specifically alleges that he seeks recovery against USG, in part, for 'any and all amounts necessary to compensate Bindea for the losses sustained by the Vessel due to the Incident.' Thus, Bindea has clearly alleged that he is seeking to recover both economic and property damage to the Vessel such that [Virginia's] economic loss rule does not apply." (quoting Countercl. & Third-Party Compl. 22, at ¶ 4) (emphasis and internal footnotes omitted)).

Further, applying Virginia's choice-of-law rules, Bindea asserts that Pennsylvania's version of the economic loss rule governs his tort claims against USG because USG's allegedly tortious conduct most likely occurred in Pennsylvania. *See id.* at 14–16 (citing *McMillan*, 253 S.E.2d at 663). Unlike Virginia law, Pennsylvania law carves out "a narrow exception" to its economic loss rule in "'cases where information is negligently supplied by one in the business of supplying information . . . and where it is feasible that the information will be used and relied upon by third persons.'" *Id.* at 16 (quoting *Bilt-Right Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285 (Pa. 2005)). Thus, Bindea argues that his allegations state a claim for relief against USG under Pennsylvania tort law. *See id.* at 17–18. USG replies that Bindea's claims against it "are contractual as pleaded" under Virginia law and, applying Virginia's choice-of-law rules, argues that Virginia contract law governs those claims because they all relate to a marine insurance contract that was "made" in Virginia. USG Reply 4–5 (citing *Ryder Truck Rental, Inc. v. UTF Carriers Inc.*, 790 F. Supp. 637 (W.D. Va. 1992)). USG also notes that Bindea's claims do not seek to recover in tort for any "property damage" to the Vessel when it

capsized because the "alleged negligence [was] in the procurement of insurance, not negligence [in] causing the Vessel to capsize." *Id.* at 6. USG reiterates that Virginia's economic loss rule bars Bindea's claims against it. *See id.* at 5–6 (citing *Filak*, 594 S.E.2d at 613).

II. The Legal Framework

A.     *The Declaratory Judgment Act*

The Declaratory Judgment Act allows a federal court, in "a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The court may entertain such a request when:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (quotation marks omitted). "[T]he jurisdiction of the court depends on the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 571 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)). Within those jurisdictional bounds, "a declaratory judgment action is appropriate when the judgement will serve a useful purpose in clarifying and settling the legal relations in issue and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (cleaned up).

B.     *Impleader*

Rule 14 governs impleader in civil actions. Fed. R. Civ. P. 14(a)–(c). The Rule's purpose "is to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determination of the rights and liabilities of

12

all the interested parties in one suit." *Dishong v. Peabody Corp.*, 219 F.R.D. 382, 385 (E.D. Va. 2003) (citing *Glens Falls Indem. Co. v. Atl. Bldg. Corp.*, 199 F.2d 60, 63 (4th Cir. 1952)). In a normal civil case, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). When, as here, the original "plaintiff asserts an admiralty or maritime claim under Rule 9(h)," Fed. R. Civ. P. 14(c); *see* ASIC Compl. ¶ 3, "the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 14(c)(1). Rule 14(c)'s broader scope of impleader "promotes efficient apportionment of liability in admiralty suits." *Afunday Charters, Inc. v. ABC Ins. Co.*, 997 F.3d 390, 391 (1st Cir. 2021).

"Nevertheless, whether to permit the third-party claim to remain in the lawsuit is a matter left to the sound discretion of the district court." *Dishong*, 219 F.R.D. at 385 (citing *Duke v. Reconstr. Fin. Corp.*, 209 F.2d 204, 208 (4th Cir. 1952)). "This is as true of third-party claims brought under Rule 14(c) as it is [to those brought] under Rule 14(a)." *Id.* (citing *Lewis v. United States*, 816 F. Supp. 1097, 1099 n.3 (E.D. Va. 1993)). "Impleader will be liberally allowed[] if it will prevent duplication of suits on closely related matters. However, courts need not permit the defendant to implead a third party when doing so might prejudice the original plaintiff or the third-party defendant." *Dishong*, 219 F.R.D. at 385 (citations omitted). Impleader may also be denied "[i]f bringing in the third party will introduce unrelated issues and unduly complicate the original suit," such as when there is "a lack of similarity between the issues and evidence required to prove the main and third-party claims[.]" *Dishong*, 219 F.R.D. at 385; *see, e.g.*, *id.* at 385–87 (dismissing third-party complaint without prejudice). "Any party may move to strike the

third-party claim, to sever it, or to try it separately," Fed. R. Civ. P. 14(a)(4). *See Dishong*, 219

F.R.D. at 387 n.7.

C.    *Rule 12(b)(6) Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss challenges whether a complaint sets out a "short and

plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To get past the pleading stage, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Id.* at 678 (quotation marks omitted). Legal conclusions and "naked

assertions devoid of further factual enhancement," *id.*, "are not entitled to the assumption of

truth," but they "can provide the framework of a complaint," *id.* at 679. "When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.* at 679; *see Turner*, 930 F.3d at 644 (noting the

court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences" in the

plaintiff's favor, but "need not accept legal conclusions couched as facts or unwarranted

inferences, unreasonable conclusions, or arguments"). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 679;

*see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Dismissal of a complaint for

failure to state facts supporting each of the elements of a claim is, of course, proper."). The

"court[] must consider the complaint in its entirety, as well as other sources courts ordinarily

examine when ruling on a ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308, 322 (2007), and "those attached to the motion to dismiss, so long as they are integral to the complaint and authentic," *Philips*, 572 F.3d at 180.

## III. Discussion

*A.     Subject-Matter Jurisdiction*

Bindea's pleading invokes 28 U.S.C. § 1367(a) as the sole statutory basis for this Court's subject-matter jurisdiction over his declaratory judgment action against ASIC. *See* Countercl. & Third-Party Compl. ¶ 6; Civ. Cover Sheet §§ II, VI, ECF No. 5-1. Section 1367(a) would allow the Court to exercise supplemental jurisdiction over Bindea's counterclaim because its operative facts "are so related to claims" in ASIC's declaratory judgment action within the Court's "original jurisdiction [under § 1333] that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a). *See generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *White v. Cnty. of Newberry, SC*, 985 F.2d 168, 172 (4th Cir. 1993); *Bennett v. Fastenal Co.*, 184 F. Supp. 3d 304, 308 (W.D. Va. 2016).

However, it is clear from the face of Bindea's pleading that his counterclaim seeking a declaration against ASIC that coverage exists under the marine insurance Policy—essentially the mirror image of ASIC's claim that no such coverage exists—has its own, independent basis in admiralty jurisdiction under § 1333, Countercl. & Third-Party Compl. ¶¶ 42–49 (Count I). *See Bindea*, 2022 WL 4756255, at *9 (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955); Fed. R. Civ. P. 9(h)); *Flame S.A.*, 762 F.3d at 362; *J.J. Ryan & Sons, Inc.*, 369 F. Supp. at 693. Dismissing ASIC's claim against Bindea therefore did not affect this Court's statutory authority to entertain Bindea's counterclaim against ASIC. *Cf. Technimark, Inc. v. Crellin, Inc.*, 14 F. Supp. 2d 762, 767 (M.D.N.C. 1998) (noting that dismissing plaintiff's patent-infringement claim did "not destroy federal jurisdiction over Defendants' counterclaim" seeking

declaratory judgment that the patent was invalid because federal patent jurisdiction, 28 U.S.C. § 1338, provided an independent jurisdictional basis over the counterclaim).

Additionally, Bindea's pleading alleges a live dispute with ASIC, at the time of filing, *Grupo Dataflux*, 541 U.S. at 571, "over the existence and/or scope of coverage provided by a marine insurance contract on the Bob Rouse," *Bindea*, 2022 WL 4756255, at *9. *See* Countercl. & Third-Party Compl. ¶¶ 42–49. "A declaratory judgment would both 'clarify and settle the legal relations in issue' and 'terminate and afford relief from the coverage controversy.'" *Bindea*, 2022 WL 4756255, at *9 (quoting *Penn-Am. Ins. Co.*, 368 F.3d at 413 (cleaned up)). Accordingly, the Court will exercise jurisdiction over Bindea' declaratory judgment action against ASIC.

The Court has supplemental jurisdiction over Bindea's third-party claims against Uhr, ASAP, and USG because they "are so related to" Bindea's counterclaim "in the action within [the Court's] original jurisdiction [under § 1333] that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a). Put differently, the Court's supplemental jurisdiction over Bindea's third-party claims flows not from ASIC's original claim against Bindea, but from Bindea's counterclaim against ASIC that itself falls within this Court's original admiralty jurisdiction.[7] Bindea's "claims need only revolve

---

[7] Bindea's pleading invokes 28 U.S.C. § 1367(a) as the sole statutory basis for this Court's subject-matter jurisdiction over the third-party claims. *See* Countercl. & Third-Party Compl. ¶ 7 ("The Court has subject matter jurisdiction over the Third-Party Defendants [sic] pursuant to 28 U.S.C. § 1367(a) because the claims asserted against the Third-Party Defendants form part of the same case or controversy as the primary claim[] asserted by Atlantic Specialty in its declaratory judgment action."). It does not allege any facts supporting a reasonable inference that Bindea suffered "the total loss of the Vessel after" it capsized, Br. in Opp'n 15, or that the amount in controversy otherwise exceeds the sum or value of $75,000, *see* Countercl. & Third-Party Compl. ¶¶ 39–41; *id.* 22, at ¶¶ 1, 2–4 (seeking declaratory judgment against ASIC that "coverage exists for the Incident under the terms of the subject Policy," or, "should the Court determine that there is no coverage under the Policy," seeking judgment requiring Uhr, ASAP, and/or USG "to pay compensatory damages to Bindea, including, but not limited to, any and all amounts necessary to compensate Bindea for the [unspecified] losses sustained by the Vessel due to the Incident"). *See Piedmont Roofing Servs. v. Nationwide Mut. Ins. Co.*, No. 5:22cv145, 2023 WL 196460, at *2 (W.D.N.C. Jan. 17, 2023) (noting that "in a declaratory judgment action where a party seeks to recover on an insurance claim, the amount in controversy is the amount of the claim," and not the face value of the

around a central fact pattern" to confer supplemental jurisdiction under § 1367(a). *White*, 985 F.2d at 172; *accord Bennett*, 184 F. Supp. 3d at 308 (noting that "[m]ost federal courts require only a loose factual connection between the claims to satisfy" § 1367(a) (quotation marks omitted)). All Bindea's claims loosely relate to the Policy that ASIC issued on the Bob Rouse, which did not provide the scope of coverage that Bindea allegedly thought Uhr, ASAP, and USG had procured on his behalf. *See, e.g.*, Countercl. & Third-Party Compl. ¶¶ 47, 52–53, 57–58, 61, 63, 71.

B.     *Impleader in Maritime Declaratory Judgment Action*

The Court will allow Bindea's third-party claims to remain in this lawsuit. The third-party complaint alleges that Uhr, ASAP, and USG "may be wholly or partly liable" to Bindea "for remedy over, contribution, or otherwise on account of the same . . . series of transactions or occurrences," Fed. R. Civ. P. 14(c), that led ASIC to issue the insurance Policy underlying the original coverage dispute between ASIC and Bindea, *see, e.g.*, Countercl. & Third-Party Compl. ¶ 27 ("Despite having knowledge that the Vessel would operate in and around Haiti, Uhr, ASAP, and USG procured marine insurance coverages with a navigational warranty and limitation for the Vessel that Atlantic Specialty is now seeking to invoke to deny coverage."); *id.* ¶¶ 53, 58 (alleging that the Third-Party Defendants "provid[ed] inaccurate or false information in the application and [s]upplemental [a]pplication" submitted to ASIC). Other district courts within the Fourth Circuit have allowed defendants to implead their third-party claims against nonparty insurance agents or brokers in similar cases. *See, e.g.*, *Endurance Am. Ins. Co. v. HAT Invs.*, C.A. No. 7:18-3162, 2019 WL 13096092, at *3 (D.S.C. Nov. 13, 2019) (citing Fed. R. Civ. P. 14(a)).

---

underlying policy) (citing *Darbet, Inc. v. Bituminous Cas. Corp.*, 792 F. Supp. 487, 488–89 (S.D. W. Va. 1992)).

Moreover, ASIC prevailed on its sole claim against Bindea, so there is no risk that allowing Bindea to proceed on his own claims against USG "might prejudice the original plaintiff" in this action. *Dishong*, 219 F.R.D. at 385. Nor is there any concern that bringing in USG "will introduce unrelated issues and unduly complicate the original suit." *Id.* ASIC's original suit against Bindea has been resolved, and that resolution bars Bindea's counterclaim against ASIC. Only Bindea's third-party claims against the Third-Party Defendants remain on track for trial. Allowing impleader here will avoid multiple lawsuits and "promote judicial economy." *Endurance Am. Ins. Co.*, 2019 WL 13096092, at *3 (citing *Noland Co. v. Graver Tank & Manuf. Co.*, 301 F.2d 43, 50 (4th Cir. 1962) ("[T]he primary objectives of third-party procedure is to avoid circuitry and multiplicity of actions.")).

C.      *Choice of Law*

Before turning to the merits of USG Rule 12(b)(6) motion to dismiss, I must begin with a threshold choice-of-law issue. "As a federal court exercising supplemental jurisdiction, the Court applies the choice of law rules of the forum state." *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 727 (E.D. Va. 2012) (citing *Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487 (1941)); *accord Terry v. June*, 420 F. Supp. 2d 493, 500 (W.D. Va. 2006) ("A federal court exercising diversity or pendent jurisdiction over state law claims must apply the choice of law rules of the forum in determining which [substantive] law governs those claims." (citing *Klaxon Co.*, 313 U.S. 487 (diversity); *Gibbs*, 383 U.S. 715 (diversity); *In re Merritt Dredging Co.*, 839 F.2d 203, 205 (4th Cir. 1988) (pendent)). This federal Court sits in Virginia, and the parties agree that Virginia's choice-of-law rules control. *See* Bindea Br. in Opp'n 15–16; USG Reply 4–5.

"The first step in applying Virginia's choice of law rules is to determine how Virginia would characterize" each of Bindea's claims "for choice of law purposes." *Terry*, 420 F. Supp.

18

2d at 502 (addressing claim characterization on summary judgment); *see also Ryder Truck Rental*, 790 F. Supp. at 641 & n.4 (noting that "Virginia's characterization of the claim controls in this forum" and allowing plaintiff to file an amended complaint adding a "pure contract claim" that was nonetheless cognizable in tort under New York or Connecticut law). The answer to that question is "important because of the choice-of-law rules that flow from the characterization." *Ryder Truck Rental*, 790 F. Supp. at 640. If Virginia characterizes Bindea's allegations as tort claims, as Bindea argues it does, then Virginia's choice-of-law rules would say that "the law of the place of the tortious conduct (also called lex loci delicti) supplies the substantive law to [those] tort claims." Bindea Br. in Opp'n 15 (citing *McMillan*, 253 S.E.2d at 663); *accord Milton v. IIT Res. Inst.*, 138 F.3d 519, 521–22 (4th Cir. 1998) (noting that "Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions," meaning that "Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt"); *cf. Ryder Truck Rental*, 790 F. Supp. at 641 ("Because the forum is Virginia, if characterized as a tort claim, the doctrine of *lex loci delicti* applies and requires Virginia law to govern the matter because the alleged tort of bad faith failure to defend or settle took place in Virginia."). Bindea asserts "that USG's alleged tortious conduct very likely occurred in . . . Pennsylvania," and so "that state's law, including its version of the economic loss rule, should apply to Bindea's claims against USG." Bindea Br. in Opp'n 15–16. Applying Pennsylvania law may allow Bindea's claims against USG to get past the pleading stage. *See id.* at 16–17 (discussing *Bilt-Right Contractors*, 866 A.2d at 272–88).

On the other hand, if Virginia characterizes Bindea's allegations as contract claims, as USG argues it does, then Virginia's choice-of-law rule would select the law of the state in which the contract was made. USG Reply 4–5; *see Ryder Truck Rental*, 790 F. Supp. at 641. USG

argues that the marine insurance Policy is the "contract" at issue here and that this contract was "made" in Virginia, when the Policy was delivered to Bindea in Virginia. USG Reply 5 (citing Countercl. & Third-Party Compl. ¶ 9 (alleging that Uhr, ASAP, and USG "assisted in the procurement of a marine insurance policy that was delivered to Bindea in Virginia")); *see Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004) ("Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured."). Applying Virginia's economic loss rule would likely bar Bindea's claims against USG. *See* USG Br. in Supp. 7–9 (discussing *Filak*, 594 S.E.2d at 613–14); USG Reply 5–6 (same); Bindea Br. in Opp'n 18–19.

*

Bindea's Third-Party Complaint asserts three counts expressly alleging some type of negligence (Count II, IV & V) and one count alleging breach of fiduciary duty (Count III) all arising out of USG's unsatisfactory efforts to secure insurance coverage on Bindea's behalf. *See* Countercl. & Third-Party Compl. ¶¶ 51–54, 56–59, 61–66, 68–73. He maintains that these are torts. "The word 'tort' has a settled meaning in Virginia." *Tingler v. Greystone Homes, Inc.*, 834 S.E.2d 244, 253 (Va. 2019). "A tort is any civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie." *Id.* at 254. "'Tort' is also defined as the violation [by the defendant] of some duty owing to the plaintiff imposed [on the defendant] by the general law or otherwise," but "not by mere agreement of the parties." *Id.* "Stated differently, a 'tort' is a legal wrong committed upon the person or property independent of contract." *Id.* (internal quotation omitted). "By its very nature, tort law imposes duties upon the otherwise unwilling. Consent concepts that are inherent in contract law offer no solace to tortfeasors." *Id.*

"In determining whether a cause of action sounds in tort, contract, or both, the source of the duty violated must be ascertained." *Id*. (internal quotation omitted). "[T]o recover in tort, the duty . . . breached must be a common law duty, not one existing between the parties *solely* by virtue of [a] contract" or agreement. *Id.* at 255 (emphasis added). In making that determination, Virginia courts generally "focus on the 'gist' or the 'gravamen' of the [plaintiff's] cause of action," *id.* at 260, and the "types of the alleged damages," *id.* at 258. If the plaintiff's complaint alleges that "the defendant's performance, as distinct from his promise or his preparation, has gone so far that it has begun to affect the interests of the plaintiff *beyond the expected benefits of the contract* itself," then the cause of action sounds in tort.[8] *Id.* But when the plaintiff alleges "nothing more than disappointed economic expectations *assumed only by agreement*, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak*, 594 S.E.2d at 613 (emphasis added). "A party may not use tort claims of negligence to seek such damages." *Tingler*, 834 S.E.2d at 266 (explaining Virginia's economic loss doctrine).

**

Bindea asserts that USG owed Bindea "a duty of care in connection with their efforts to secure insurance coverage on Bindea's behalf, which specifically included a duty to exercise a reasonable degree of care, skill, and ability" both in "procuring the insurance that Bindea requested," Countercl. & Third-Party Compl. ¶ 51 (Count II, negligence); *accord id.* ¶ 56 (Count III, breach of fiduciary duty); and in their dealings with Bindea concerning that insurance, *see id.* ¶¶ 61–64 (Count IV, negligent misrepresentation); *id.* ¶¶ 68–73 (Count V, negligent failure to

---

[8] "The ultimate question whether a legal duty in tort exists is a pure question of law to be reviewed de novo." *Tingler*, 834 S.E.2d at 253 (cleaned up). Accordingly, this Court may answer the threshold legal question of how Virginia law characterizes Bindea's claims on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Pen Coal Corp. v. William H. McGee & Co.*, 903 F. Supp. 980, 983 (S.D. W. Va. 1995); *cf. Tingler*, 834 S.E.2d at 249 (addressing the issue on appeal from order granting demurrer).

warn). USG, which had been brought in by Uhr and ASAP to help find insurance for Bindea's Vessel, *see id.* ¶¶ 14–20, "knew or should have known that the Vessel would be operating primarily out of Haiti and would be crewed by more than three crew members," *id.* ¶¶ 52, 57, 67, 69. He alleges that USG breached the duties owed to him by, among other things, (1) "providing inaccurate or false information" to ASIC, which led ASIC to issue a Policy that did not cover any losses sustained while the Vessel was in Haitian waters, *id.* ¶¶ 53, 58, 65; (2) "failing to procure marine insurance" for Bindea that did protect the Vessel in Haitian waters, *see id.* ¶ 53, 58, 63; (3) "failing to procure Hull and Machinery coverage in the amounts requested by Bindea and represented to him by" Uhr, ASAP, and USG, *id.*; *see also id.* ¶¶ 61, 63, 65; and (4) failing to "properly advise Bindea of the risks of the type of the marine insurance coverages that they procured on Bindea's behalf for his benefit," including that the Policy may not cover "any losses occurring outside the east coast of Florida," *id.* ¶¶ 70–71.

Bindea asserts that he "has suffered damages as a direct result and proximate result" of USG's negligence, *id.* ¶¶ 54, 59, 66, 73, but he does not allege any facts describing the nature or amount of those damages. Rather, because ASIC owes Bindea "no coverage under the Policy," Bindea wants USG to pay him "any and all amounts" of money "necessary to compensate [him] for the losses sustained by the Vessel due to the Incident." Countercl. & Third-Party Compl. 22, at ¶ 4; *see* Bindea Br. in Opp'n 10–11.

\* \* \*

"It is now well established, in Virginia and elsewhere, that an insurance professional owes a duty to his principal to exercise reasonable, skill, and diligence in effecting insurance. Thus, he may be held liable where he has breached a contract to procure insurance for his principal." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1470 n.15 (4th Cir. 1996) (quotation

22

marks omitted); *see LEXCORP v. W. World Ins. Co.*, No. 4:10cv27, 2010 WL 3855305, at *5 (W.D. Va. Oct. 1, 2010) (noting that the Virginia Supreme Court "plainly recognize[s] that a breach of contract action may lie against an insurance agent for failing to procure insurance" (citing *Dickerson v. Conklin*, 235 S.E.2d 450, 454 (Va. 1977); *Std. Prods. Co. v. Wooldridge & Co.*, 201 S.E.2d 801, 805 (1974)). But this duty arises solely by virtue of an agreement between the principal and the insurance professional to procure insurance for the principal. *See Filak*, 594 S.E.2d at 614 (holding that "whatever duties [insurance agent] may have assumed arose solely from the parties' alleged oral contract" for agent to procure coverage on plaintiffs' behalf). Indeed, the Virginia Supreme Court has held that an insurance agent hired to procure insurance for the plaintiffs "did not have a common law duty to the plaintiffs arising out of the parties' dealings" and thus could not be liable in tort when she failed to procure the insurance coverage they wanted. *Filak*, 594 S.E.2d at 613. Accordingly, Virginia law characterizes Bindea's claims against USG as contract claims because the duties allegedly breached arose solely out of an alleged agreement for USG to procure marine insurance coverage for the Vessel on Bindea's behalf, *see* Countercl. & Third-Party Compl. ¶¶ 14, 16–18, 25, 27, 30, 51–53, 56–58, 61–65, 68–72. *See, e.g.*, *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 294–95 (Va. 2007) (third-party plaintiff's claim that insurance agent breached fiduciary duty by misrepresenting facts sounded in contract, not tort, because "[a]ny fiduciary duty allegedly breached in this case existed solely because of the contractual relationship" between the parties); *Filak*, 594 S.E.2d at 613–14 (insurance agent's misrepresentations and failure to procure requested coverages); *Mil-Rich, Inc. v. Travelers Prop. Cas. Ins. Co.*, No. CL-07-151, 2008 WL 11519348, at *2–4 (Va. Cir. Nov. 4, 2008) (negligence generally); *cf. Barnette v. Brook Rd., Inc.*, 429 F. Supp. 2d 741, 750 (E.D. Va. 2006) (plaintiff's allegations that car dealership made material false statements with intent to

mislead plaintiff into signing purchase agreement stated a tort claim for fraud under Virginia law).

The next step in applying Virginia's choice-of-law rules is to determine which state's substantive law governs Bindea's contract claims against USG. *See Ryder Truck Rental*, 790 F. Supp. at 641–42. In Virginia, "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." *Seabulk Offshore*, 377 F.3d at 419 (citing *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1977)). "[Q]uestions arising in connection with the performance of a contract," on the other hand, are governed by "the law of the place of performance." *Equitable Tr. Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975) (citing *Arkla Lumber & Mfg. Co. v. W. Va. Timber Co.*, 132 S.E. 840, 842 (Va. 1926)).

USG argues that the "contract" at issue here is the marine insurance Policy that ASIC issued to Bindea. *See* USG Reply 5 (citing Countercl. & Third-Party Compl. ¶ 9). Bindea's brief maintains that his negligence claims sound in Virginia tort law, and it therefore does not identify any specific contractual relationship between the parties that might give rise to his claims against USG. *See* Bindea Br. in Opp'n 14–19. "Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." *Seabulk Offshore*, 377 F.3d at 419. Bindea alleges that Uhr, ASAP, and USG all "assisted in the procurement of a marine insurance policy that was delivered to Bindea in Virginia." Countercl. & Third-Party Compl. ¶ 9. Accordingly, there appears to be no dispute that, assuming Virginia law characterizes Bindea's allegations as sounding in contract law, Virginia law—including its version of the economic loss rule—also governs whether those allegations state any tort claim for which Bindea can recover damages against USG, *see* Bindea

24

Br. in Opp'n 18 ("Even under Virginia law, the economic loss rule does not preclude Bindea's claims because they seek recovery for property damage."). *Cf. Wiener v. AXA Equitable Life Ins. Co.*, No. 21-2165, 2023 WL 329317, at *4–5 (4th Cir. Jan. 20, 2023) (published decision) (holding that the defendant "waived any contention that this action should have been governed by Connecticut law" and that "the district court erred when it engaged in its own choice-of-law analysis and decided to apply Connecticut law").

D.      *Virginia's Economic Loss Doctrine Bars Bindea's Tort Claims Against USG*

Virginia's economic loss doctrine is "a remedy-specific application of the source-of-duty rule" discussed above. *Tingler*, 834 S.E.2d at 264. "Under this doctrine, claims for damages which were within the contemplation of the parties when framing their agreement—such as economic losses to property that is the subject of the agreement—remain the particular province of the law of contracts." *Id.* at 264–65 (quotation marks omitted). "A party may not use tort claims to seek such damages." *Id.* at 265. Bindea's request that USG step in and compensate him for a Loss that would have been covered by ASIC's Policy had USG procured the coverages that Bindea wanted for his Vessel is purely a claim for "disappointed economic expectations," *Filak*, 594 S.E.2d at 613, caused by USG's failure to procure those coverages. Accordingly, Virginia's "economic-loss doctrine precludes recovery in tort for any economic loss attributable to [USG's] alleged breach of contract or for any property damage specifically involving the [Vessel] itself, which was the object of the contract," *Tingler*, 834 S.E.2d at 265. The Court will grant USG's Rule 12(b)(6) motion and dismiss Bindea's third-party complaint against USG because all four counts asserted are tort claims, and not breach-of-contract claims. *See, e.g.*, *Augusta Mut. Ins.*, 645 S.E.2d at 291; *Filak*, 594 S.E.2d at 613–14; *Mil-Rich, Inc.*, 2008 WL 11519348, at *2–4.

V. Conclusion

25

For the foregoing reasons, Third-Party Defendant USG Insurance Service's motion to dismiss Bindea's third-party complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 28, is hereby **GRANTED**.

ENTER: February 16, 2023

Joel C. Hoppe
U.S. Magistrate Judge