IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division – In Admiralty

| | |
|---|---|
| BOGDAN ANDREI BINDEA,          )<br>　　Third-Party Plaintiff,       )<br>                               )<br>v.                             )<br>                               )<br>ASAP INSURANCE AGENCY &        )<br>JOHN UHR,                      )<br>　　Third-Party Defendants.      )<br>                               )  | Civil Action No. 3:21-cv-00002<br><br>MEMORANDUM OPINION & ORDER<br><br>By:　Joel C. Hoppe<br>　　　United States Magistrate Judge |

　　This matter is before the Court on Plaintiff Bogdan Bindea's Motion for Merit Sanctions against Defendant John Uhr under Rule 37(d) of the Federal Rules of Civil Procedure. Mot., ECF No. 74. Bindea asks the Court to treat certain factual allegations against Uhr as established for purposes of this action, *see id.* at 1 (citing Third-Party Compl. ¶¶ 12–15, 21–22, 25–29, 34, 37–38, ECF No. 5), because Uhr did not appear for his court-ordered deposition in September 2022, *see* Pl.'s Br. in Supp. 1–2 (citing Order of Sept. 6, 2022, ECF No. 67), ECF No. 75. Uhr did not respond to Bindea's motion within fourteen days. *See* Pretrial Order ¶ 7, ECF No. 22.

I. The Legal Framework

　　Rule 37(b)(2) authorizes the district court where an action is pending to impose evidentiary sanctions when a party "fails to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), including an order directing the party to participate in his own deposition, *see Taylor v. Oak Forest Health & Rehab., LLC*, 302 F.R.D. 390, 393–95 (M.D.N.C. 2014). "Once a court makes the threshold determination under Rule 37(b)" that a prior discovery order has been violated, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what sanction(s) to impose, *Ins. Corp. of Ir. v. Compagnie*

1

*des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).[1] "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (citing Fed. R. Civ. P. 37(b)(2)(A)). In making this determination, the district court should consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would . . . be[] effective." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc)); *see Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 123–24 (4th Cir. 2019) (citing Fed. R. Civ. P. 37(b)(2)(A)).

## II. Background & Procedural History

This case initially involved a dispute over whether a marine insurance policy issued by Atlantic Specialty Insurance Company ("ASIC" or "Atlantic Specialty") to Bindea, as owner of the supply vessel "M/V Bob Rouse," covered Bindea's claimed Loss sustained when the Vessel capsized in Haitian waters. *Atl. Specialty Ins. Co. v. Bindea*, No. 3:21cv2, 2022 WL 4756255, at *1 (W.D. Va. Sept. 30, 2022) (published opinion) (*Bindea I*). ASIC sought declaratory judgment that the Policy did not cover the Loss, and Bindea responded with a counterclaim seeking his own declaratory judgment that the Policy fully covered the Loss. *See id.* In September 2022, I entered judgment in ASIC's favor on its claim against Bindea. ECF No. 72. "This judgment

---

[1] Such sanctions "may include" orders deeming facts established, permitting or requiring an adverse inference, entering default judgment against the disobedient party, or holding the party in civil contempt. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533–34 (D. Md. 2010) (quoting Fed. R. Civ. P. 37(b)(2)(A)); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi); *Thompson*, 219 F.R.D. at 102 ("Rule 37(b)(2) provides a non-exclusive list of possible sanctions[.]"); 8B Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2289 (3d ed. 2018) (explaining that Rule 37(b)(2) gives courts "broad discretion to make whatever disposition is just" in the particular case and that available sanctions are "not limited to the kinds of orders specified" in subsection (b)(2)(A)(i)–(vi)).

2

establishes 'as a matter of law that [ASIC] is not obligated to cover Bindea's claim for the Loss at issue,' and thus foreclose[d] Bindea's right to declaratory judgment that ASIC is obligated to cover that Loss," Show Cause Order 2 (quoting *Bindea I*, 2022 WL 4756255, at *1), ECF No. 86. ASIC has been dismissed from the action. ECF No. 88.

Bindea also filed a third-party complaint asserting four tort claims against John Uhr, ASAP Insurance Agency ("ASAP"), and insurance broker USG Insurance Services ("USG"). *Atl. Specialty Ins. Co. v. Bindea*, No. 3:21cv2, 2023 WL 2062591, at * 2 (W.D. Va. Feb. 16, 2023) (published opinion) (*Bindea II*) (citing Third-Party Compl. ¶¶ 3–5, 7, 9, 12–22, 50–54, 55–59, 61–66, 68–73). ASAP and Uhr filed separate answers to that pleading, ECF Nos. 33, 50, and the parties started discovery in June 2021, *see* ECF Nos. 22, 43.[2] Jeffrey DeCaro, Esq., represented both ASAP and Uhr. Party depositions were initially scheduled to take place on January 20, 2022, but all counsel agreed to reschedule after Bindea fell ill shortly beforehand.

On January 19, Mr. DeCaro emailed Uhr "notifying [him] of the plan" to reset his videoconference deposition for March 16, 2022. *See* Defs. ASAP & Uhr's Resp. to Mot. to Compel ¶¶ 9–10, ECF No. 64; *see* Mot. to Compel Ex. 1, Uhr Dep. Notice 1, ECF No. 56-3; *id.* Ex. 2, Email from J. DeCaro to M. Vincenzo et al. (Mar. 12, 2022), ECF No. 56-4. Later that day, Uhr replied, "Jeffrey, I'm good. Let me know. John Uhr." Defs. ASAP & Uhr's Resp. to Mot. to Compel ¶ 11. This email was the last Mr. DeCaro heard from Uhr. *Id.* ¶ 12. On March 12, Mr. DeCaro emailed all counsel to say that he had lost contact with Uhr and he was "not at all confident that [he would] re-establish contact" before his deposition. Mot. to Compel Ex. 2, at

---

[2] In February 2023, I granted USG's motion to dismiss the third-party complaint because Virginia's economic-loss doctrine barred Bindea's tort claims against the insurance broker. *See Bindea II*, 2023 WL 2062591, at *12–13. USG has also been dismissed from the action. Only Bindea's claims against Uhr and ASAP (Counts II–V) remain at this point.

3

1. Uhr failed to appear for his properly noticed deposition on March 16, 2022. *See* Mot. to Compel 1, ECF No. 56.

That May, Bindea filed a motion to compel Uhr to appear for a deposition. Mr. DeCaro tried to serve Uhr with his own notices to take Uhr's oral deposition in June and July 2022. *See* Defs. ASAP & Uhr's Resp. to Mot. to Compel Exs. 4 & 5, ECF Nos. 64-4, 64-5. On September 6, I granted Bindea's motion to compel and issued an order directing Uhr to appear, in person, on September 28, 2022, at a business address in Jersey City, New Jersey, to be deposed by Bindea's attorney. ECF No. 67. I also denied without prejudice Bindea's request that the Court "impose merit sanctions if Uhr fails without justification to appear as directed" because it was premature. *Id.* at 1–2. Nevertheless, I warned Uhr that "his failure to comply with this discovery Order may result in the Court allowing Uhr's counsel of record to withdraw from representing him in this matter and/or imposing sanctions under Rule 37(b)(2) of the Federal Rules of Civil Procedure."[3] *Id.* at 1 (emphasis omitted). A copy of the Order was served on Uhr through Mr. DeCaro via CM/ECF, *see* Fed. R. Civ. P. 5(b)(1), (b)(2)(E), and was also available on the public docket. Uhr did not appear for his deposition on September 28, 2022. Accordingly, Bindea now renews his motion for merits sanctions under Rule 37. *See* Mot. 1–2.

### III. Discussion

Uhr violated my September 6, 2022, Order directing him to appear in person for his rescheduled deposition on September 28, 2022. Thus, the Court should sanction Uhr under Rule

---

[3] In January 2023, I allowed Mr. DeCaro's law firm to withdraw from representing Uhr because, "despite his repeated and diligent efforts to communicate with Mr. Uhr over the past year, neither Mr. DeCaro nor his agents ha[d] been able to reestablish any contact with Mr. Uhr." Order of Jan. 4, 2023, at 1, ECF No. 81. I also warned Uhr that he was "no longer represented by an attorney in this case" and that, unless he retained new counsel of record, Uhr "must personally handle all facets of the litigation as they relate to" Bindea's claims against him. *See id.* at 1–2. The Clerk mailed a paper copy of this Order to Uhr at his last-known address of record. Fed. R. Civ. P. 5(b)(2)(C). Nothing indicates that Uhr did not receive it. The Order was also electronically filed on the public docket. ECF No. 81.

37(b) "both as a matter of justice" in this case "and 'to deter others who might be tempted to similar conduct,'" *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011) (Gorsuch, J.) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Choosing the appropriate sanction(s) requires me to consider whether Uhr acted in bad faith, the kind and degree of prejudice his conduct caused Bindea, and whether alternative, less severe sanctions would provide an effective remedy and deterrent. *See S. States Rack & Fixture*, 318 F.3d at 597.

"In the Fourth Circuit, bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Brooks Sports, Inc. v. Anta (China) Co.*, No. 1:17cv1458, 2018 WL 7488924, at *(E.D. Va. Nov. 30, 2018) (quoting *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985)). While Uhr is not an attorney, he "clearly should have understood his duty" to appear as directed by the Court for his deposition on September 28, 2022. *Sines v. Kessler*, 339 F.R.D. 96, 109 (W.D. Va. 2021). Uhr "'had actual and constructive knowledge' of [that] Order" because it was served on his attorney and posted on the public docket. *Sines*, 2021 WL 4314590, at *6 (quoting Civil Contempt Order at 6–7, *Sines v. Kessler*, No. 3:17cv72 (Sept. 16, 2020) (Moon, J.), ECF No. 877). Yet, he "made no effort to acknowledge [his] obligations," *Young Again Prods. v. Acord*, 459 F. App'x 295, 303 (4th Cir. 2011), with respect to that directive—despite being warned that the Court would allow his attorney to withdraw and may impose Rule 37 sanctions if he failed to comply. Such flagrant disregard for a party's discovery obligations and the judicial process must obviously be deterred. *See, e.g.*, *Sines v. Kessler*, No. 3:17cv72, 2021 WL 2309968, at *6 (W.D. Va. June 7, 2021) ("Simply not showing up for a properly noticed deposition [is] not an acceptable choice." (citing Fed. R. Civ. P. 37(d)(1)(A)); *Middlebrooks v. Sebelius*, Civ. No. PJM-2792, 2009 WL 2514111, at *3 (D. Md. Aug. 13, 2009) ("Violating court orders to appear for deposition . . .

Case 3:21-cv-00002-JCH   Document 89   Filed 04/26/23   Page 6 of 9   Pageid#: 640

without even attempting to offer justification or excuse go to the heart of the court process and totally inhibits a just resolution of disputes. Emphatically, this type of behavior needs to be deterred.").

Uhr's noncompliance also "caused 'significant' procedural and substantive prejudice to [Bindea's] ability to resolve [his] claims in a just, speedy, and inexpensive manner." *Sines v. Kessler*, No. 3:17cv72, 2021 WL 4314590, at *6 (W.D. Va. Sept. 22, 2021) (quoting *First Mariner Bank v. Resolution Law Grp.*, Civ. No. MJG-12-1133, 2014 WL 1652550, at *19 (D. Md. Apr. 22, 2014)). For example, Uhr's failure to appear at his own depositions "'unacceptably forestalled [Bindea's] ability to get discovery to which [he is] entitled,' including [Uhr's] 'truthful and fulsome' answers to oral questions posed by [Bindea's] attorneys." *Sines*, 2021 WL 4314590, at *6 (quoting Civil Contempt Order at 6–7, *Sines v. Kessler*, No. 3:17cv72 (Sept. 16, 2020) (Moon, J.), ECF No. 877). His willful failure to be deposed on those and other relevant topics also "leaves an evidentiary gap justifying an 'appropriately tailored sanction' against him." *Sines v. Kessler*, No. 3:17cv72, 2021 WL 1143291, at *10 (W.D. Va. Mar. 24, 2021) (quoting *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l*, 323 F.R.D. 167, 175 (S.D.N.Y. 2017)), *adopted by* 2021 WL 5492826, at *1–2 (W.D. Va. Nov. 19, 2021) (Moon, J.). Such sanctions will still allow Uhr to defend himself against Bindea's claims, if he wants to, "and will not have an impermissible 'spillover' effect on any Defendant who did not disobey a discovery order." *Sines*, 2021 WL 4314590, at *7 (citing *Peltz v. Moretti*, 272 F. App'x 475, 477–78 (6th Cir. 2008) (noting that the district court cannot deem facts established against a party who did not disobey a discovery order)).

IV. Conclusion

6

Bindea's Motion for Merit Sanctions against Defendant John Uhr under Rule 37 of the Federal Rules of Civil Procedure, ECF No. 74, is hereby **GRANTED** to the extent consistent with this Order. The following facts will be taken as established against Uhr[4] for purposes of this civil action only:

a. Bindea is the owner of the M/V BOB ROUSE, a 100-foot utility vessel (the "Vessel"). Third-Party Compl. ¶ 12; *accord* Uhr Answer ¶ 12 (admitted), ECF No. 50.

b. Around January 23, 2020, Bindea first contacted Uhr to assist him with procuring various types of marine insurance coverages for the Vessel, including Protection & Indemnity ("P&I") coverage and Hull & Machinery coverage. Third-Party Compl. ¶ 12; *accord* Uhr Answer ¶ 12 (admitted).

c. Bindea and Uhr subsequently exchanged numerous telephone calls and text messages to facilitate obtaining P&I and Hull and Machinery Coverage. Third-Party Compl. ¶ 13.

d. These communications all took place while Bindea was: (1) aboard the Vessel, transiting from Louisiana to Florida; (2) aboard the Vessel transiting from Florida to Haiti; and (3) located on land in Haiti. *Id.*

e. During his multiple communications with Uhr, Bindea advised that the Vessel would be primarily engaged in humanitarian relief operations in and around Haiti. *Id.*

f. The fact that the Vessel would be operating in Haiti was communicated by Bindea to Uhr prior to coverage being bound on the Vessel. *Id.* ¶ 14.

g. Bindea had a reasonable expectation that the coverages obtained by Uhr would be consistent with the Vessel's area of operations and mission. *Id.*

h. Prior to the subject casualty in November 2020, and consistent with his earlier advices to Uhr, the Vessel was primarily used by Bindea in support of humanitarian relief work performed by Bindea and companies he is affiliated with in Haiti. *Id.* ¶ 15.

i. On March 20, 2020, Uhr notified Bindea via text message that coverage had been bound on the Vessel. *Id.* ¶ 21; *accord* Uhr Answer ¶ 21 (admitted).

j. On March 24, 2020, Uhr sent a screenshot to Bindea of a Certificate of Insurance for the Policy which included no limitations on the geographic area in which the Vessel could operate and set forth hull and machinery coverage in the amount of $600,000. Third-Party Compl. ¶ 22 (citing Third-Party Compl. Ex. A, ECF No. 5-2, at 1); *accord* Uhr Answer ¶ 22 (admitted).

k. At no time did Bindea advise Uhr, either implicitly, expressly or otherwise, that the Vessel would operate solely within the east coast of Florida. Third-Party Compl. ¶ 25.

---

[4] "Though some of the original allegations appearing in the [T]hird-Party Complaint also pertain to ASAP, USG, and Atlantic Specialty, Bindea only prays that the facts be taken as true with respect to Uhr has the non-complying party." Pl.'s Br. in Supp. 10 n.2; *accord Sines*, 2021 WL 4314590, at *7.

    l.  Uhr had direct knowledge that the Vessel was located in Haiti and would be primarily used for humanitarian relief work in Haiti. *Id.*

    m.  Bindea did not complete, sign, or submit the Application or Supplemental Application and these documents make materially inaccurate and or false statements regarding the intended operational territory of the Vessel and the number of crew required and intended to operate the Vessel. *Id.* ¶ 26 (citing ASIC Compl. Ex. D, ECF No. 1-4, at 1–5; *id.* Ex. F, ECF No. 1-6, at 1–13).

    n.  The Application and Supplemental Application also contain materially inaccurate or false information on other matters, which information was not provided by Bindea and which are inconsistent with the information provided by Bindea. *Id.*

    o.  Despite having knowledge that the Vessel would operate in or around Haiti, Uhr procured marine insurance coverages with a navigational warranty and limitation for the Vessel that Atlantic Specialty successfully invoked to deny coverage for Bindea's claimed Loss. *Id.* ¶ 27 (citing ASIC Compl. Ex. G, ECF No. 1-7, at 1–49).

    p.  At no time prior to the subject casualty did Uhr provide Bindea with a copy of the Policy, and he was never advised of the provisions Atlantic Specialty successfully invoked to deny coverage for Bindea's claimed Loss. *Id.* ¶ 28.

    q.  Uhr failed to inform Bindea that, if the Vessel sustained any damages, losses or liabilities occurring outside of the navigational limit described in the Policy, the insurance would be suspended and thus the Policy would be of no value to Bindea while the Vessel was performing its primary function, humanitarian relief work in Haiti. *Id.* ¶ 29.

    r.  At no time did Uhr disclose to Bindea, as the insured, that certain types of coverages – namely, P&I coverage and Hull & Machinery coverage – might be suspended should the Vessel operate in Haiti. *Id.* ¶ 34.

    s.  Bindea did not advise Uhr that the Vessel would have only three (3) crew members. *Id.* ¶ 37.

    t.  Uhr failed to inform Bindea that, if the Vessel sustained any losses while being operated by more than three (3) crew members, then P&I coverage for the loss could be limited or denied. *Id.* ¶ 38.

In addition to the sanctions imposed above, the Court must require Uhr, the attorney advising him, or both to pay Bindea's reasonable expenses, including attorney's fees, caused by Uhr's failure to appear for his court-ordered deposition, "unless the failure was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(C); *see also* Fed. R. Civ. P. 30(d)(2), (3)(C). Uhr's former attorney bears no blame for

8

Uhr's failure to attend his deposition. That responsibility rests solely with Uhr, and no basis exists for relieving Uhr of his obligation to pay Bindea's fees and expenses. Thus, the Court will require Uhr to pay Bindea's reasonable expenses and attorney's fees for bringing the sanctions motion. Bindea may file a petition setting out such expenses, including his attorney's fees, within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

ENTER: April 26, 2023

Joel C. Hoppe
U.S. Magistrate Judge